UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

|  |  |  |
|---|---|---|
| *In re:* | : | |
| | : | |
| | : | Case No. 16-12045 (JLG) |
| PHILLIP MICHAEL SCOTT, | : | Chapter 13 |
| | : | |
| *Debtor.* | : | |
| | : | |

--------------------------------------------------------- X

|  |  |  |
|---|---|---|
| PHILLIP MICHAEL SCOTT, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| vs. | : | Adv. P. No. 16-01195 (JLG) |
| | : | |
| AMERICAN SECURITY INSURANCE | : | |
| COMPANY, OCWEN LOAN SERVICING, | : | |
| BANK OF NEW YORK MELLON, ERWIN | : | |
| VENCER, ESQ., McCABE, WEISBERG & | : | |
| CONWAY, P.C., BARBARA CAMPBELL, and | : | |
| MARLEN GAETHERS-LANGLEY, | : | |
| | : | |
| *Defendants.* | : | |

--------------------------------------------------------- X

### MEMORANDUM DECISION AND ORDER RESOLVING
### MOTIONS TO DISMISS COMPLAINT AND CROSS-COMPLAINTS

<u>**A P E A R A N C E S**</u>**:**

CARLTON FIELDS JORDEN BURT, P.A.
*Attorneys for Defendant American Security Insurance Company*
Robert W. DiUbaldo, Esq.
405 Lexington Avenue, 36th Floor
New York, New York 10174-0002

HOUSER & ALLISON, APC
*Counsel to Defendants Ocwen Loan Servicing LLC and*
*The Bank of New York Mellon Trust Company, National*
*Association FKA The Bank of New York Trust Company,*
*N.A., as Successor to JP Morgan Chase Bank, N.A., as Trustee*
*For Residential Asset Mortgage Products, Inc., Mortgage*
*Asset-backed Pass-Through Certificates Series 2005-RZ3*
Jacqueline M. Aiello, Esq.
60 E. 42n d Street, Suite 1148
New York, New York 10165

McCABE, WEISBERG & CONWAY, P.C.
*Attorneys for Defendants McCabe Weisberg &*
*Conway, P.C. and Erwin Vencer*
Charles A. Higgs, Esq.
145 Huguenot Street, Suite 210
New Rochelle, New York 10801

KIM DSOUZA, ESQ.
*Attorney for Plaintiff Phillip Michael Scott*
32 Washington Place
Newburgh, New York 12550

BARBARA CAMPBELL, *PRO SE*
4319A Wickham Avenue
Bronx, New York 10466

MARLENE GAETHERS-LANGLEY, *PRO SE*
1473 Hicks Avenue
Bronx, New York 10469

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION

Philip Michael Scott, the plaintiff and chapter 13 debtor herein (the "Debtor"), is party to

a Mortgage (defined below) on certain real property located in Scarsdale, New York.  In 2014,

Ocwen Loan Servicing LLC ("Ocwen"), as servicer for Bank of New York Mellon ("BNY"), as

mortgagee, purchased an insurance policy covering the property from American Security

Insurance Company ("ASIC").  On December 31, 2014, a fire destroyed the property.  The

Debtor contends that thereafter, ASIC paid the insurance proceeds (the "Insurance Proceeds") to

Ocwen, as BNY's servicer, in full satisfaction of the underlying Note (defined below) and

Mortgage, but that BNY and/or Ocwen have wrongfully failed to credit those instruments for the

amounts paid and to issue a satisfaction of the Mortgage.

In this adversary proceeding, the Debtor seeks: (i) money damages against most of the

named defendants based upon their alleged pre-petition breaches of common law and

miscellaneous state and federal laws in connection with their efforts to foreclose the Mortgage, and (ii) a determination that the Note, which he did not sign, and the Mortgage, which he did, are fully and finally satisfied and, as such, the Mortgage and a related judgment of foreclosure and sale entered in 2009 against the property are null and void.  He seeks relief against five of the seven defendants named in the Debtor's four-count complaint (the "Complaint"),[1] as follows: ASIC, BNY, Ocwen, Edwin Vencer, Esq. ("Vencer"), and McCabe, Weisberg & Conway, P.C. ("McCabe," and collectively with ASIC, BNY, Ocwen and Vencer, the "Defendants").  The Complaint also names Barbara Campbell ("Campbell") and Marlene Gaethers-Langley ("Gaethers-Langley," and collectively with Campbell, the "Cross-Claimants"), as defendants, although the Debtor does not seek any form of relief from either of them.  Only Campbell signed the Note; both Campbell and Gaethers-Langley executed the Mortgage.  Both of them filed answers to the Complaint, which contain counterclaims against the Debtor and cross-claims against the Defendants.[2]  The Cross-Complaints mostly incorporate the allegations and claims in the Complaint.

In Counts One and Two of the Complaint, the Debtor has aggregated damage claims against ASIC, BNY and/or Ocwen  predicated on alleged: (i) conversion; (ii) embezzlement; (iii) breach of contract; (iv) constructively fraudulent conveyances (under the New York Debtor and Creditor Law (the "NY DCL")); (v) violations of the New York General Business Law (New

---

[1]  *See* Complaint to Null and Void Mortgage and Judgment Liens Already Paid in Full, and for Money Judgment [AP ECF No. 1].

[2]  *See* Answer by Defendant Barbara Campbell, Counterclaim against Plaintiff/Debtor Phillip Michael Scott, and Cross-Complaint Against American Security Insurance Company, Ocwen Loan Servicing, Bank of New York Mellon, Erwin Vencer, Esq., McCabe, Weisberg & Conway, P.C. [AP ECF No. 3] (the "Campbell Cross-Complaint"); Answer by Defendant/Marlene Gaethers-Langley, Counterclaim against Plaintiff/Debtor Phillip Michael Scott, and Cross-Complaint Against Defendants American Security Insurance Company, Ocwen Loan Servicing, Bank of New York Mellon, Erwin Vencer, Esq., McCabe, Weisberg & Conway, P.C. [AP ECF No. 8] (the "Gaethers-Langley Cross-Complaint," and collectively with the Campbell Cross-Complaint, the "Cross-Complaints").

York's Unfair and Deceptive Trade Practices law) (the "NY GBL"); and (vi) violations of the

Fair Debt Collection Practices Act (15 U.S.C. § 1692a, *et seq*.) (the "FDCPA"). In Count Three,

he seeks money damages against Ocwen based upon Ocwen's alleged failure to credit the loan

balance with the insurance proceeds, and against BNY based upon, among other things, its

failure to record a satisfaction of mortgage and satisfaction of judgment as allegedly mandated

by section 1921 of the New York Real Property Actions and Proceedings Law (the "NY

RPAPL") and section 5020 of the New York Civil Practice Law and Rules (the "NY CPLR").

Finally, in Count Four he asserts damage claims against Vencer and McCabe under the FDCPA.

Only ASIC answered the Complaint. None of the Defendants answered the Cross-

Complaints. BNY and Ocwen (collectively, the "Mortgagee Defendants") jointly moved to

dismiss the Complaint and Cross-Complaints pursuant to Rule 12(b)(6)[3] of the Federal Rules of

Civil Procedure (the "Rules").[4] ASIC moved for judgment on the pleadings dismissing the

Complaint, pursuant to Rule 12(c), and to dismiss the Cross-Complaints pursuant to Rule

12(b)(6).[5] By amended motion, McCabe and Vencer (collectively, the "McCabe Defendants")

---

[3] As relevant, Bankruptcy Rule 7012 states that "Rule 12(b) – (i) F.R.Civ.P. applies in adversary proceedings."
Fed. R. Bankr. P. 7012(b).

[4] *See* Motion to Dismiss Adversary Proceeding by BNY and Ocwen, dated August 31, 2016 [AP ECF No. 10] (the
"Mortgagee Defendants Motion To Dismiss Complaint"); Motion to Dismiss Defendant Marlene Gaethers-
Langley's Cross-Complaint, dated September 22, 2016 [AP ECF No. 21] (the "Mortgagee Defendants Motion To
Dismiss Gaethers-Langley Cross-Complaint"); and Motion to Dismiss Defendant Barbara Campbell's Cross-
Complaint, dated September 23, 2016 [AP ECF No. 27] (the "Mortgagee Defendants Motion To Dismiss Campbell
Cross-Complaint," and collectively with the Mortgagee Defendants Motion to Dismiss Complaint and Mortgagee
Defendants Motion To Dismiss Gaethers-Langley Cross-Complaint, the "Mortgagee Defendants Motions to
Dismiss"), respectively.

Furthermore, the Mortgagee Defendants filed replies in further support of their motions to dismiss. *See* Reply
Memorandum in Further Support of Defendants' Motion to Dismiss [Responding to the Scott Opposition], dated
November 2, 2016 [AP ECF No. 36]; Reply Memorandum of Law in Further Support of Defendants' Motion to
Dismiss Cross-Complaint Filed by Co-Defendant Barbara Campbell, dated November 29, 2016 [AP ECF No. 49];
and Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Cross-Complaint Filed by
Co-Defendant Marlene Gaethers-Langley, dated November 29, 2016 [AP ECF No. 50], respectively.

[5] *See* Motion for Judgment on the Pleadings, dated October 12, 2016 [AP ECF No. 32] (the "ASIC Rule 12(c)

jointly moved to dismiss the Complaint for lack of subject matter jurisdiction, insufficient

process, improper service, and failure to state a claim for relief pursuant to Rules 12(b)(1), (2),

(4), (5) and (6), respectively.  In the alternative, they ask for summary judgment dismissing the

Complaint pursuant to Rule 56, as incorporated by Bankruptcy Rule 7056.[6]  The McCabe

Defendants filed separate motions seeking to dismiss the Cross-Complaints on similar grounds.[7]

      The Debtor, Campbell and Gaethers-Langley oppose all of the motions.  The Debtor filed

one objection covering the Mortgagee Defendants Motion to Dismiss Complaint, and the ASIC

Rule 12(c) Motion[8] and a separate objection to the McCabe Motion to Dismiss Complaint.[9]

Campbell and Gaethers-Langley did the same with respect to the various motions to dismiss the

---

Motion"); Motion to Dismiss Defendant Barbara Campbell's Cross-Complaint, dated September 23, 2016 [AP ECF No. 28] (the "ASIC Motion to Dismiss Campbell Cross-Complaint"); and Motion to Dismiss Defendant Marlene Gaethers-Langley's Cross-Complaint, dated September 23, 2016 [AP ECF No. 29] (the "ASIC Motion to Dismiss Gaethers-Langley Cross-Complaint," and collectively with the ASIC Motion to Dismiss Campbell Cross-Complaint, the "ASIC Motions to Dismiss Cross-Complaints").

[6]  *See* Amended Motion for an Order Dismissing Adversary Proceeding Pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(c) and Federal Rule of Bankruptcy Procedure 7012(b) or in the Alternative Motion for Summary Judgment Under to [sic] Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 [AP ECF No. 19] (the "McCabe Motion to Dismiss Complaint").

[7]  *See* Motion for an Order Dismissing Cross-Complaint by Co-Defendant Marlene Gaethers-Langley Pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(c) and Federal Rule of Bankruptcy Procedure 7012(b) or in the Alternative Motion for Summary Judgment Under Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 [AP ECF No. 20] ("McCabe Motion to Dismiss Gaethers-Langley Cross-Complaint"); and Motion for an Order Dismissing Cross-Complaint by Co-Defendant Barbara Campbell Pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(c) and Federal Rule of Bankruptcy Procedure 7012(b) or in the Alternative Motion for Summary Judgment Under Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 [AP ECF No. 30] (the "McCabe Motion to Dismiss Campbell Cross-Complaint," and collectively with the McCabe Motion to Dismiss Complaint and the McCabe Motion to Dismiss Gaethers-Langley Cross-Complaint, the "McCabe Motions to Dismiss"), respectively.

[8]  *See* Opposition of Phillip Michael Scott Against Motion for Judgment on the Pleadings by American Security Insurance Company and Motion to Dismiss by Ocwen Loan Servicing, LLC and Bank of New York Mellon [AP ECF No. 34] (the "Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint").

[9]  *See* Opposition of Codebtor Phillip Michael Scott Against Motion to Dismiss Complaint by McCabe, Conway, Weisberg PC and Edwin Vencer and Memorandum of Law [AP ECF No. 33] (the "Scott Opposition to McCabe Motion to Dismiss Complaint").

Cross-Complaints.[10]  In their opposition to the Mortgagee Defendants' and ASIC's motions to

dismiss their Cross-Complaints, Campbell and Gaethers-Langley essentially adopted verbatim

the Debtor's arguments in opposition to those Defendants' motions to dismiss the Complaint.[11]

The Court conducted hearings on all of the motions filed in response to the Complaint and Cross-

Complaints.[12]  What follows is the Court's resolution of those motions.

As set forth below, the Court finds that the Debtor, Campbell and Gaethers-Langley lack

standing to assert claims against the Defendants under the NY DCL.  Accordingly, the Court

dismisses those claims for relief in Count One of the Complaint and in Count One of each of the

Campbell Cross-Complaint and Gaethers-Langley Cross-Complaint, without leave to amend, for

lack of subject matter jurisdiction.  The Court dismisses the balance of the claims asserted

against the Defendants by Campbell and Gaethers-Langley in their Cross-Complaints, without

leave to amend, for lack of subject matter jurisdiction since those claims do not fall within the

---

[10]  *See* Opposition filed by Marlene Gaethers-Langley against Ocwen Loan Servicing, LLC, Bank of New York
Mellon Trust Company, N.A., and American Security Insurance Company [AP ECF No. 46] (the "Gaethers-Langley
Opposition to ASIC/Ocwen/BNY Motions to Dismiss Cross-Complaints"); and Opposition filed by Barbara
Campbell Cross-Claimant against Motion to Dismiss by Ocwen Loan Servicing LLC, Bank of New York Mellon
Trust Company, N.A. and American Security Insurance Company [AP ECF No. 47] (the "Campbell Opposition to
ASIC/Ocwen/BNY Motions to Dismiss Cross-Complaints," and collectively with the Gaethers-Langley Opposition
to ASIC/Ocwen/BNY Motions to Dismiss Cross-Complaints, the "Non-Debtor Mortgagors Oppositions"),
respectively.  *See also* Opposition of Codebtor Barbara Campbell Against Motion to Dismiss Cross Claim by
McCabe, Conway, Weisberg PC and Edwin Vencer and Memorandum of Law [AP ECF No. 45] (the "Campbell
Opposition to McCabe Motion to Dismiss Campbell Cross-Complaint"); Opposition of Codebtor Marlene Gaethers-
Langley Against Motion to Dismiss Cross Claim by McCabe, Conway, Weisberg PC and Edwin Vencer and
Memorandum of Law [AP ECF No. 43] (the "Gaethers-Langley Opposition to McCabe Motion to Dismiss
Gaethers-Langley Cross-Complaint").

[11]  *Compare* Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint [AP ECF No. 34] with Non-
Debtor Mortgagors Oppositions [ECF Nos. 46, 47].  The Court notes that the Non-Debtor Mortgagors Oppositions
appear to be virtually word-for-word identical to each other, and more particularly to the Scott Opposition to
ASIC/Ocwen/BNY Motions to Dismiss Complaint, except that both of the Non-Debtor Mortgagors Oppositions do
not include paragraph 77 from the Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint, and the
Gaethers-Langley Opposition to ASIC/Ocwen/BNY Motions to Dismiss Cross-Complaints omits footnotes 3 and 5
from the Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint.

[12]  Those hearings were held on:  December 8, 2016 (as to ASIC); December 15, 2016 (as to the Mortgagee
Defendants); and December 22, 2016 (as to the McCabe Defendants).  The Debtor failed to appear at the hearing on
December 8, 2016.  *See* AP ECF No. 55.

Court's "core," "non-core related to" or supplemental jurisdiction.  *See* 28 U.S.C. §§ 1334(b),

1367(a).  Although the Court finds that it has "non-core related to" jurisdiction over the balance

of the claims asserted by the Debtor against the Defendants in the Complaint (Counts One

through Four), the Debtor has failed to state any claim for relief in support of those counts, and,

as a matter of law, is not able to do so.  Accordingly, pursuant to 28 U.S.C. § 157(c)(1), the

Court recommends that each of those claims be dismissed, without leave to amend.

## LEGAL STANDARD AND SCOPE OF RECORD

Rule 12(b)(6) provides in relevant part:

> (b)  Every defense to a claim for relief in any pleading must be asserted in the
> responsive pleading if one is required.  But a party may assert the following
> defense[] by motion . . . (6) failure to state a claim upon which relief can be granted
> . . . .

Fed. R. Civ. P. 12(b)(6).  As noted, ASIC joins the Mortgagee Defendants and the McCabe

Defendants in urging the Court to dismiss the Cross-Complaints pursuant to Rule 12(b)(6).

However, since it answered the Complaint, it is seeking a judgment on the pleadings dismissing

the Complaint pursuant to Rule 12(c).  Under that rule, "[a]fter the pleadings are closed--but

early enough not to delay trial--a party may move for judgment on the pleadings."  Fed. R. Civ.

P. 12(c).  In resolving ASIC's motion under Rule 12(c), the Court will apply the same standard

applicable to a motion under Rule 12(b)(6).  *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.

2010); *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009); *see also* Fed. R. Civ. P. 12(h)(2)(B)

("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion

under Rule 12(c).").

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)).   Courts use a

two-prong approach in assessing the merits of Rule 12(b)(6) motions.   *See Pension Benefit Guar.*

*Corp. v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 717 (2d Cir. 2013) (noting that *Iqbal*

"creates a 'two-pronged approach' . . . based on '[t]wo working principles.'" (quoting *Iqbal,* 556

U.S. at 678-79, 129 S. Ct. 1937)).   First, the court must "accept as true all of the factual

allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light

most favorable to plaintiff, and construe the complaint liberally."   *Rescuecom Corp. v. Google*

*Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (quotation marks omitted) (citation omitted).   *See also*

*Boykin v. Keycorp*, 521 F.3d 202, 204 (2d Cir. 2008) (stating that "[i]n reviewing a motion to

dismiss, [the court] accept[s] the allegations in the complaint as true.") (citation omitted).

However, even as the Court liberally construes the pleading, "bald assertions and conclusions of

law will not suffice."   *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir.

2008) (internal quotation marks omitted) (citation omitted).   Thus, "[a] pleading that offers

'labels and conclusions' or a 'formulaic recitation of the elements of a course of actions will not

do.'" *Iqbal,* 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555).   Second, the

court must determine if those well–pleaded factual allegations state a "plausible claim for relief."

*Id.* at 679.   To meet that standard, the plaintiff must "plead[] factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* at

678.   *See also Kaufman v. Time Warner*, 836 F.3d 137, 141 (2d Cir. 2016) (noting that the

"plausibility" standard "asks for more than a sheer possibility that a defendant has acted

unlawfully." (quoting *Iqbal*, 556 U.S. at 678)) (internal quotations marks omitted); *Twombly*,

550 U.S. at 555 (observing that "[f]actual allegations must be enough to raise a right to relief

above the speculative level . . . ." (citing 5 C. Wright & A. Miller, Federal Practice and

Procedure § 1216, pp. 235-36 (3d ed. 2004))).  In approaching the second prong, the "reviewing

court [is required] to draw on its experience and common sense."  *Iqbal*, 556 U.S. at 679.

In opposing the motions, the Debtor and Cross-Claimants argue facts not alleged in the

Complaint or Cross-Complaints[13] and seek to introduce documents not referenced therein.[14]

Except as otherwise noted herein, in assessing the merits of the Defendants' various motions  and

the oppositions thereto, the Court will not consider those materials, as "it is axiomatic that the

[c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss."  *O'Brien v.

Nat'l Prop. Analysts Partners,* 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (citations omitted).  *See*

*also Longo v. Ortiz*, 15-CV-7716, 2016 WL 5376212, at *4 (S.D.N.Y. Sept. 26, 2016) (noting

that in resolving a motion to dismiss, "the Court does not rely on factual assertions made for the

first time in Debtor's opposition brief").

The McCabe Defendants submitted an affirmation of Charles Higgs, an attorney with

McCabe, in support of their original motion to dismiss the Complaint [ECF No. 9-1], but did not

---

[13]  *See, e.g.*, Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint ¶ 23 (contending Ocwen only
became servicer for BNY after the Loan went into default); ¶ 22 (arguing Ocwen directed McCabe to conduct the
anticipated foreclosure without publishing a notice of sale and not to actually serve required parties); ¶¶ 25-27
(alleging that ASIC was the subject of multiple investigations over forced placed insurance policy sales in various
states and assessed substantial penalties in some of them, including an alleged multi-million fine in Florida, and
$565,000 in Massachusetts); ¶ 31 (theorizing about possible existence of a settlement between ASIC and Ocwen
over the putative proceeds from the Policy); ¶¶ 49 n. 5 (alleging that Ocwen knew of ASIC's "reputation" in the
forced placed insurance market); and ¶ 51 n.7 (indicating that Ocwen's representative contacted Campbell to advise
that issues over the Policy had been settled, and confirming ASIC had sent an agent to the Property to investigate the
claim).  The opposition to the McCabe Motions to Dismiss contain a more robust description of why the McCabe
Defendants are "debt collectors under the Federal Debt Collection Practices Act (*see* Scott Opposition to McCabe
Motion to Dismiss Complaint ¶ 18) and a slightly expanded set of facts concerning the McCabe Defendants,
including that Ocwen was the party that directed the McCabe Defendants to improperly serve and publish notice of
the proposed sale (*id.* at 17); and they "engaged in sewer service." (*see* Gaethers-Langley Opposition to McCabe
Motion to Dismiss Gaethers-Langley Cross-Complaint ¶ 14(f)).

[14]  Those documents include unauthenticated print-outs from state government websites concerning ASIC (*see, e.g.*,
Scott Opposition to McCabe Motion to Dismiss Complaint, Exs. A and B); *amicus* briefs from the Consumer
Finance Protection Bureau filed in several cases in different Circuit Courts of Appeal (*id.* at Exs. B and C); a letter
from Ocwen to Campbell, dated May 18, 2016, concerning new force placed insurance (*see* Scott Opposition to
ASIC/Ocwen/BNY Motions to Dismiss Complaint, Ex. C); and emails from an Ocwen representative to Campbell
(*id.* at Ex. E).

include it with the McCabe Motion to Dismiss Complaint, which amended that original motion.

Accordingly, the Court will not consider it for any purpose.  The Mortgagee Defendants

submitted certifications from their counsel Jacqueline M. Aiello (the "Aiello Certifications") in

support of their motions to dismiss the Complaint and the Cross-Complaints.[15]  In the Aiello

Certifications, counsel asks the Court to take judicial notice of: (i) the Complaint and Cross-

Complaints; (ii) the Note and Mortgage; (iii) the two assignments of Mortgage; and (iv) six

documents filed of record in various state and federal court proceedings relating to the Property

(defined below).  Neither the Debtor nor either of the Cross-Claimants objected to any of the

requests that the Court take judicial notice of any of the documents of record in this Court and

other courts.

In resolving these motions, the Court can consider all the documents annexed to the

Aiello Certifications since they consist of the Complaint, documents referenced in or integral to

the Complaint and the Cross-Complaints and documents filed of record in this Court, the federal

District Court and New York state court.  *See, e.g.*, *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.

2004) (noting that on a motion to dismiss, "a complaint is deemed to include any written

instrument attached to it as an exhibit, materials incorporated in it by reference, and documents

that, although not incorporated by reference, are 'integral' to the complaint.") (citations omitted);

*Taylor v. Vermont Dep't of Educ*., 313 F.3d 768, 776 (2d Cir. 2002) (noting that in assessing the

merits of a Rule 12(b)(6)  motion, the court "is generally limited to the facts as presented within

the four corners of the complaint, to documents attached to the complaint, or to documents

---

[15]  *See* Defendants' Attorney Certification of Jacqueline M. Aiello, which Certification accompanied each of the
Mortgagee Defendants Motions to Dismiss [ECF Nos. 10-1 (dated August 31, 2016), 21-3 (dated September 22,
2016), and 27-3 (dated September 23, 2016), respectively].  The only difference between those three Certifications
is that the Certification submitted with the Mortgagee Defendants Motion to Dismiss Campbell Cross-Complaint
includes a copy of the Campbell's Cross-Complaint, and the Certification submitted with the Mortgagee Defendants
Motion to Dismiss Gaethers-Langley Cross-Complaint includes a copy of the Gaethers-Langley's Cross-Complaint.

incorporated into the complaint by reference."); *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 471 (S.D.N.Y. 2009) (noting that a court "may properly rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including the public record of prior judicial decisions.") (internal quotation marks omitted) (citations omitted); *Geron v. Seyfarth Saw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013) ("[M]atters judicially noticed by the District Court are not considered matters outside the pleadings." (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008))).[16]

ASIC and the Mortgagee Defendants deny that ASIC paid the insurance proceeds to any party, let alone BNY or Ocwen, and that the Mortgage has been satisfied.  ASIC submitted the declaration of James Kroll, Vice President of Claims for ASIC (the "Kroll Declaration"),[17] and the Mortgagee Defendants submitted the affidavit of Kyle Lucas, an Ocwen employee (the "Lucas Affidavit"),[18] to refute the Debtor's and Cross-Claimants' assertions to the contrary.  *See* Kroll Declaration ¶ 4; Lucas Affidavit ¶¶ 10, 11.  Not to be outdone, in opposing the motions and to challenge the Lucas and Kroll Affidavits, the Debtor and Cross-Claimants each submitted an identical affidavit from the Debtor (the "Scott Affidavit").[19]

---

[16] To that end, in resolving the motions, the Court will also take judicial notice of, and refer to, a Memorandum Decision of the United States District Court for the Southern District of New York, dated October 21, 2015.  *See Scott v. The Bank of New York Trust Co., N.A. (In re Scott)*, 15 CV 755, 2015 U.S. Dist. LEXIS 187978 (S.D.N.Y. Oct. 21, 2015).  That decision was also entered in the Debtor's prior closed chapter 7 case, discussed below.  *See In re Phillip Michael Scott*, Case No. 13-23312 (RDD) [Bankr. S.D.N.Y. Case No. 13-23312, ECF No. 75].

[17] *See* Declaration of James Kroll in Support of Defendant American Security Insurance Company's Motion to Dismiss Cross-Complaint, dated September 16, 2016, which Declaration accompanied the ASIC Rule 12(c) Motion and each of the ASIC Motions to Dismiss [AP ECF Nos. 22-1, 24-1, and 32-2, respectively].

[18] *See* Affidavit in Support of Motion to Dismiss of Kyle Lucas, dated August 29, 2016, which Affidavit accompanied each of the Motions to Dismiss.  [AP ECF Nos. 10-12, 21-2, and 27-2, respectively].

[19] *See* Affidavit in Support of Opposition to Defendant's Motion to Dismiss, dated October 26, 2016 [AP ECF Nos. 34-4, 46-1, and 47-1, respectively].

Subject to the application of Rule 12(d), in assessing the merits of a motion under Rule

12(b)(6) or 12(c), the court "is generally limited to the facts as presented within the four corners

of the complaint, to documents attached to the complaint, or to documents incorporated into the

complaint by reference." *Taylor*, 313 F.3d at 776.   In relevant part, Rule 12(d) provides, "[i]f,

on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

Fed. R. Civ. P. 12(d).   "[A] district court is not obliged to convert a 12(b)(6) motion to one for

summary judgment in every case in which a defendant seeks to rely on matters outside the

complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous

material and construe the motion as one under Rule 12(b)(6)."   *United States v. Int'l

Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 450 (E.D.N.Y. 2007) (collecting cases).   The

Lucas, Kroll and Scott Affidavits introduce matters outside of the four corners of the Complaint.

ASIC contends that if the Court were to consider the Kroll Affidavit, it would be appropriate to

grant it summary judgment dismissing the Complaint and Cross-Complaints.   *See* ASIC Rule

12(c) Motion at 8, n. 7.   That might be the case if the Debtor and Cross-Claimants each had not

submitted the Scott Affidavit.   However, in doing so, they have asserted facts the Court finds

sufficient to defeat a summary judgment motion.   *See* Scott Affidavit ¶¶ 2-4.[20]   The Court will

not convert the ASIC Rule 12(c) Motion, the ASIC Motions to Dismiss, or the Mortgagee

Defendants Motions to Dismiss to Rule 56 summary judgment motions.   Accordingly, the Court

excludes the Kroll, Lucas and Scott Affidavits in resolving those motions.   *See Trans-Spec Truck

Serv. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008) (noting that if court chooses "to

ignore supplementary materials submitted with the motion papers and determine the motion

---

[20]   *See* AP ECF No. 34-4 at 20-22; AP ECF No. 46-1 at 20-22; AP ECF No. 47-1 at 20-22.

under the Rule 12(b)(6) standard, no conversion occurs and the supplementary materials do not

become part of the record for purposes of the Rule 12(b)(6) motion."). *See also Rice v.

Kawasaki Heavy Indus., Ltd.,* No. CV-07–4031, 2008 WL 4646184, at *3 (E.D.N.Y. Oct. 17,

2008) (exercising discretion and excluding "extraneous material submitted by the . . . defendants

on their motion and decide their motion on the complaint alone" thereby declining to convert

motion from one under Rule 12(b)(6) to a Rule 56 summary judgment motion).[21]

## FACTS

On or about July 15, 2005, the Debtor, together with Campbell and Gaethers-Langley,

purchased certain real property located at 12 Inverness Road, Scarsdale, New York (the

"Property").  Compl. ¶ 15.[22]  To finance the acquisition of the Property, Campbell borrowed

$725,000 (the "Loan") from Finance America, LLC ("Finance America").  The Loan is

evidenced by a promissory note (the "Note") and is secured by a mortgage (the "Mortgage") on

the Property.  *See* Aiello Cert. Ex. B (Note and Mortgage dated June 16, 2005) [AP ECF No. 10-

3].  Only Campbell executed the Note (*id.*), although the Debtor, Campbell and Gaethers-

Langley executed the Mortgage.  *Id.*  Finance America assigned the Mortgage to JP Morgan

Chase Bank, N.A. ("Chase") in April 2006, and in May 2008, Chase assigned the Mortgage to

BNY.  *Id.* Ex. C (Assignments of Mortgage, dated April 14, 2006 and May 30, 2008,

respectively) [AP ECF No. 10-4].  Ocwen services the Loan for BNY.  *See generally* Compl. ¶¶

5, 18.  Campbell defaulted on the Loan in 2008, and on July 29, 2008, Chase commenced a

foreclosure action in New York State Supreme Court which resulted in the entry of a judgment

---

[21]  Separately, the McCabe Defendants ask the Court to grant it summary judgment dismissing the Complaint, but rely solely on the Complaint in support of that request.  *See* McCabe Motion to Dismiss the Complaint ¶¶ 7, 14-17. The Court declines to do so.

[22]  The Complaint states that the borrowers purchased the Property "[i]n, or about July 16, 2016."  Compl. ¶ 15.  It is clear from the record that the reference to 2016 was a typographical error, since the Property was acquired in 2005.

of foreclosure and sale on March 16, 2009 (the "Judgment of Foreclosure"). *See In re Scott,*

2015 U.S. Dist. LEXIS 187978, at *2.[23]  Since that time, the Debtor and the Cross-Claimants

have unsuccessfully sought to vacate or otherwise challenge the enforceability of that Judgment

of Foreclosure in state court and in the United States District Court.[24]  On or about June 22,

2016, BNY and Ocwen filed a Notice of Foreclosure and Sale (the "Sale Notice") in the New

---

[23]  That was the third state court action brought to foreclose the Mortgage.  Earlier, Campbell defaulted under the Note, and in 2006 Chase brought an action in state court to foreclose on the Property.  On November 8, 2006, the state court issued a judgment of foreclosure and sale, and on January 8, 2007, Chase conducted a foreclosure sale. *See In re Scott*, 2015 U.S. Dist. LEXIS 187978, at *2.  By stipulation dated May 15, 2007 (the "May 15 Stipulation"), Chase cancelled the sale and reinstated the Mortgage. *Id. See also* Aiello Cert. Ex. D (copy of May 15 Stipulation).  Campbell defaulted again and BNY commenced a second foreclosure action in June 2008, but voluntarily discontinued it when Gaethers-Langley (a party to that action) filed a Chapter 13 bankruptcy petition. *Id.*

[24]  Following entry of that judgment, the parties engaged in unsuccessful settlement negotiations, and the state court scheduled a foreclosure sale for March 10, 2010. *See In re Scott,* 2015 U.S. Dist. LEXIS 187978, at *3.  On March 8, 2010, the Debtor moved by order to show cause to vacate the Judgment of Foreclosure, and the sale was canceled. The Debtor argued that the court lacked personal jurisdiction over him and that BNY had not only failed to provide him with notice, but also lacked standing to bring the foreclosure action.  Ultimately, the court rejected those arguments. *Id.* The Debtor moved the state court two more times to vacate the Judgment of Foreclosure on the same grounds.  The court denied those motions on April 12, 2011 and March 28, 2012, respectively. *Id.*  In her Decision and Order dated March 28, 2012 (the "2012 State Court Decision"), Justice Smith stated, in part:

> The inescapable fact is that this mortgage has not been paid since May 1, 2007.  Numerous conferences have been held herein and there simply exists no reason in law or equity for this action to not forthwith proceed to its logical conclusion.
>
> Defendant is hereby advised that no future Order to Show Cause or any other motion relief seeking vacature of this judgment will be entertained by the Court.  In the event that defendant inadvisably nevertheless moves for such relief, he is hereby advised the Court shall deem such motion practice frivolous with the meaning of 22 N.Y.N.R.R. 130-1.1, and the Court may impose upon him an award of costs and/or sanctions.

2012 State Court Decision (Aiello Cert., Ex. E) [AP ECF No. 10-6].

    The Debtor also brought two actions in the United States District Court for the Southern District of New York. Acting *pro se*, Debtor, Campbell, and Gaethers-Langley filed an action against BNY and Chase, seeking monetary damages and to void the Judgment of Foreclosure. *See Campbell v. Bank of N.Y. Trust Co., N.A.,* No. 11 CV 1588 (CS) (S.D.N.Y.). Debtor brought a separate action seeking similar relief against BNY, Mortgage Electronics Registration Systems, Inc., and Residential Capital, LLC. *See Scott v. Bank of N.Y. Trust Co., N.A.,* No. 12 CV 2607 (CS) (S.D.N.Y.).  Both actions asserted numerous federal and state law claims, in essence alleging appellee's foreclosure action was fraudulent because Chase never actually assigned appellant's mortgage to BNY.  Both actions were eventually dismissed in their entirety. *See In re Scott,* 2015 U.S. Dist. LEXIS 187978, at *4. *See also* Aiello Cert. Exs. F (dismissing complaint in *Campbell v. Bank of N.Y. Trust Co, N.A.* after adoption of magistrate judge's report and recommendation) and G (dismissing amended complaint in *Scott v. Bank of N.Y. Trust Co., N.A.* by order dated August 13, 2012), respectively.

York State Supreme Court (the "State Court"), scheduling a sale of the Property for July 22,

2016 (the "July 22 Sale").  Compl. ¶ 19.[25]  That sale did not go forward because on July 20,

2016, the Debtor commenced his chapter 13 case by filing a petition under chapter 13 of the

Bankruptcy Code,[26] thereby automatically staying the July 22 Sale.  *See* 11 U.S.C. § 362.

Neither Ocwen nor BNY has sought stay relief herein.

    This is the Debtor's third bankruptcy filing.  On May 3, 2013, he filed a chapter 13

petition in this Court,[27] which he voluntarily dismissed on May 9, 2013.[28]  On August 7, 2013,

Debtor filed his second chapter 13 case,[29] which he voluntarily converted to a case under chapter

7 of the Bankruptcy Code (the "Chapter 7 Case") on August 21 2013.[30]  On December 18, 2013,

the Debtor received a discharge in bankruptcy,[31] and on April 18, 2014, the chapter 7 trustee

issued a report of no distribution indicating that he had fully administered the estate and that no

distributable assets remained.[32]

    The Complaint focuses on matters arising after the entry of the Judgement of Foreclosure.

According to the Debtor, "[o]n or about September 4, 2013, Campbell and Gaethers-Langley

---

[25]  The Complaint states that "[o]n, or about June 22, 2014, after Ocwen received payment in full as determined by ASIC, on the mortgage note," BNY and Ocwen filed a Notice of Foreclosure and Sale.  Compl. ¶ 19.  However, this is clearly a typographical error, as the Notice of Foreclosure and Sale (attached as Ex. A to the Complaint) is dated June 22, 2016.

[26]  In paragraph 9 of the Complaint, the Debtor alleges he filed his chapter 13 petition on July 20, 2016.  However, in paragraph 25 of the Complaint, he alleges that he filed the petition on July 20, 2014.  *Compare* Compl. ¶ 9 with Compl. ¶ 25.  The Court's docket reflects that the Debtor filed his chapter 13 case on July 20, 2016.

[27]  *See In re Phillip Michael Scott*, Case No. 13-22714 (RDD) [ECF No. 1].

[28]  *Id.* [ECF No. 9].

[29]  *See In re Phillip Michael Scott*, Case No. 13-23312 (RDD) [ECF No. 1].

[30]  *Id.* [ECF No. 11].

[31]  *Id.* [ECF No. 39].

[32]  *Id.*  [ECF entry dated April 18, 2014].

transferred, or had already transferred, all their right, title, and interest in [the Property] to [the

Debtor], which transfers were properly memorialized by the timely filing of deeds with the

Westchester County Clerk."  Compl. ¶ 27.  The Debtor maintains that on or about January 1,

2014, Ocwen purchased a forced placed hazard insurance policy (the "Policy") on the Property

from ASIC, and charged the Policy premium of $5,998 to the Loan balance.  *Id*. ¶ 16, Ex. B

(copy of the Policy).  He asserts that the Policy provided a liability limit of $712,908 (the

principal amount of the Loan then outstanding), covered the period of May 14, 2014 to May 14,

2015, and identified Barbara Campbell and Ocwen as the named insured and named mortgagee,

respectively.  Compl. Ex. B.

On or about December 31, 2014, a fire destroyed the Property.  *Id*. ¶ 17.  The Debtor

alleges that thereafter, "upon information and belief": (i) Ocwen made a claim for the fire loss to

ASIC; (ii) ASIC cut a check (the "Insurance Check") made payable to Ocwen and Campbell in

an amount equal to the balance due under the Mortgage, as determined by ASIC; and (iii)

Ocwen, not Campbell, took possession of the Insurance Check, "apparently" forged Campbell's

signature onto the check and realized payment under the Policy.  *Id.* ¶¶ 18, 30-31.  The Debtor

contends that by charging the Mortgage for the forced placed insurance, ASIC contracted to

insure the Debtor, Campbell and Gaethers-Langley in the amount of the Mortgage, in the event

of a casualty loss.  *Id*. ¶ 35.  He says that ASIC breached that contract and its legal duty to pay

the Insurance Proceeds to them.  *Id*. ¶¶ 34, 36.  The Debtor asserts that NY RPAPL § 1921

mandates that a mortgagee that receives full payment must timely file a mortgage satisfaction;

and that NY CPLR § 5020 requires a judgment lien holder that receives payment in full to file a

satisfaction of judgment.  *Id*. ¶¶ 20, 21.  He maintains that, although Ocwen received payment in

full on the Mortgage – as allegedly determined by ASIC – neither Ocwen nor BNY filed

16

"satisfactions of the [M]ortgage and the [J]udgment," (*id.* ¶¶ 19, 22) and "Ocwen did not conform the loan balance to the ASIC determination, and did not credit the loan account with the amount Ocwen received." *Id.* ¶ 33. Moreover, the Debtor contends that although New York State law prohibits a judgment lien creditor from executing on the judgment lien after being paid in full, BNY nonetheless filed its Notice of Sale in the state court. *Id.* ¶¶ 23, 24. Further, he contends, in any event, that the notice was defective because: (i) BNY served the parties at old addresses, notwithstanding that it had notice of the correct addresses; (ii) Campbell did not receive the Sale Notice; and (iii) BNY did not comply with any of the statutory requirements to serve notice by local newspaper. *Id.* The Debtor also alleges that the Sale Notice served on parties "contained different information than that annexed to the affidavit of service filed with the [State Court]." *Id.*

The Debtor asserts that his action "qualifies as an adversary proceeding pursuant to [Bankruptcy Rule] 7001(2) as an action to determine the validity of a lien," and "to obtain a declaratory judgment relating [thereto]" in accordance with Bankruptcy Rule 7001(9). *Id.* ¶ 12. The Debtor asks for a declaratory judgment "establishing that the mortgage lien, and the Judgment of Foreclosure and Sale, are paid in full and said mortgage and judgment are null and void[,]" and damages from the Defendants based on miscellaneous legal theories founded on state, federal and common law. *Id.* He alleges that pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 157(b)(2)(O), the Court has core jurisdiction to finally resolve the claims in the Complaint. *See id.* ¶ 13. The Debtor's requests for damages are as follows:

### Count One

The Debtor seeks money damages against ASIC, BNY and/or Ocwen predicated on alleged: (i) conversion; (ii) embezzlement; (iii) constructively fraudulent conveyances (under the NY DCL); (iv) violations of the NY GBL; and (v) violations of the FDCPA. *Id.* ¶¶ 28-31, 40.

### Count Two

The Debtor seeks money damages against ASIC for alleged breaches of contract.  In addition, he seems to be seeking a determination that § 509(b)(2) of the Bankruptcy Code bars ASIC from being subrogated to Ocwen's rights against the Debtor.  *Id.* ¶¶ 32-36, 40.

### Count Three

The Debtor seeks money damages against Ocwen and BNY occasioned by their alleged (i) conversion; (ii) embezzlement; (iii) violations of the FDCPA, and (ii) failure to record a satisfaction of mortgage and a satisfaction of a judgment as allegedly mandated under NY RPAPL § 1921 and NY CPLR § 5020, respectively.  *Id.* ¶¶ 37-40.

### Court Four

The Debtor seeks money damages from the McCabe Defendants, as counsel to BNY and Ocwen, based upon their alleged violations of the FDCPA.  *Id.* ¶¶ 41-42.  The Debtor requests money judgments against Ocwen, BNY and ASIC in the sum of $2,195,260, and against Vencer and McCabe in the sum of $2,207,260.37.  *Id.* ¶ 40.

In her Cross-Complaint, Gaethers-Langley purports to incorporate all of the allegations in paragraphs 1 through 41 of the Complaint and the demands for relief in the Complaint's "WHEREFORE" clauses, and "respectfully requests the court grant any relief to Plaintiff/Debtor Phillip Michael Scott in the name of Codebtor Marlene Gaethers-Langley as well."  Gaethers-Langley Cross-Complaint ¶ 11(a) - (c).[33]  In her Cross-Complaint, Campbell likewise purports to incorporate all of the allegations in paragraphs 1 through 41 of the Complaint and the demands

---

[33]  Thus, Gaethers-Langley requests:

A)  Declaratory judgment establishing that the mortgage lien, and the Judgment of Foreclosure and Sales, are paid in full and said mortgage and judgment are null and void, and/or

B)  Money judgment in favor of Phillip Michael Scott and Marlene Gaethers-Langley, and against American Security Insurance Company, Ocwen Loan Servicing, LLC and Bank of New York  Mellon, in the amount of $2,195,260.37, and/or

C)  Money judgment in favor of Phillip Scott and Marlene Gaethers-Langley, and against Erwin Vencer, Esq. and McCabe, Weisberg & Conway, P.C. in the amount of $2,207,260.37, and/or

D)  Such other and further relief as the court deems just, proper, and equitable.

for relief in the Complaint's "WHEREFORE" clauses, and "respectfully requests the court grant any relief to Plaintiff/Debtor Phillip Michael Scott, in the name of Codebtor Barbara Campbell as well." Campbell Cross-Complaint ¶ 11(a) - (c).[34] However, Campbell asserts two additional claims in support of her damage claims not found in the Complaint. In her "Count 5," Campbell seeks damages against ASIC, Ocwen and BNY in the sum of $2,195,260.37, based on their alleged "Breach of Contract."[35] In her "Count 6," Campbell seeks "special statutory damages" of $2,000.00, and actual damages totaling $2,193,260.37, from Ocwen, McCabe, and Vencer, based upon their alleged breaches of the FDCPA.[36]

## SUBJECT MATTER JURISDICTION AND
## AUTHORITY TO ENTER FINAL ORDERS

The Court has an independent obligation to determine the scope of its jurisdiction over

---

[34] Thus, Campbell requests:

    A) Declaratory judgment establishing that the mortgage lien, and the Judgment of Foreclosure and Sales, are paid in full and said mortgage and judgment are null and void, and/or

    B) Money judgment in favor of Phillip Michael Scott and Barbara Campbell, and against American Security Insurance Company, Ocwen Loan Servicing, LLC and Bank of New York Mellon, in the amount of $2,195,260.37, and/or

    C) Money judgment in favor of Phillip Scott and Barbara Campbell, and against Erwin Vencer, Esq. and McCabe, Weisberg & Conway, P.C. in the amount of $2,207,260.37, and/or

    D) Such other and further relief as the court deems just, proper, and equitable.

[35] Briefly, in support of that claim, Campbell asserts that: (i) Ocwen procured the Policy in her name and charged the cost of the Policy to the Note and Mortgage; (ii) in 2016, she received a telephone call from an Ocwen representative who advised her that (a) provision for payment in full of the Note and Mortgage had been achieved by settlement agreement, (b) the insurance company had determined that amount of the Mortgage to be $712,908.00 which amount would constitute payment in full of the Note and Mortgage, and (c) she would receive a check in the mail for that amount made out to her, among others, and that she should sign the check and mail it to Ocwen; and (iii) she never received the check and believes that ASIC never sent it to her. Campbell Cross-Complaint ¶¶ 12-18. Campbell alleges that she suffered "actual damages for the check she did not receive in the amount of $712,908.00, plus for what Ocwen Loan Servicing LLC continues to demand in the amount of $1,481,352.37, for total damages of $2,193,260.37." *Id.* ¶ 19.

[36] In support of that count, Campbell alleges that: (i) after the "purported date of default" on the Note and Mortgage, Ocwen, Vencer and McCabe, all of whom qualify as "debt collectors" under the FDCPA, each undertook to collect on the Note; (ii) she believes that (a) Ocwen caused ASIC to send her settlement insurance payment check directly to Ocwen, (b) Ocwen signed her name to the check without her consent, and (c) Ocwen collected the amount of the insurance settlement payment intended to satisfy in full the Judgement and Mortgage; and (iii) asserts that, nonetheless, Ocwen has demanded payment from her of $1,481,352.37. Campbell Cross-Complaint ¶¶ 20-24, 26.

the claims in the Complaint and the Cross-Complaints. *See Walker, Truesdell, Roth & Assocs. v.*

*Blackstone Grp., L.P. (In re Extended Stay, Inc.)*, 466 B.R. 188, 201 (S.D.N.Y. 2011) (finding

"the bankruptcy court 'has jurisdiction to determine its own jurisdiction'" (quoting *Hassett v.*

*FDIC (In re CIS Corp.)*, 140 B.R. 351, 353 (S.D.N.Y. 1992))); *accord Mulligan Law Firm v.*

*Zyprexa MDL Plaintiffs' Steering Comm. II (In re Zyprexa Prods. Liab. Litig.)*, 594 F.3d 113,

126 (2d Cir. 2010) (noting "a federal court has jurisdiction to determine its own jurisdiction"

(citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 291 (1947); *Kuhali v. Reno*,

266 F.3d 93, 100-01 (2d Cir. 2001))).[37]  "The jurisdiction of the bankruptcy courts, like that of

other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S.

300, 307 (1995).  *See also In re Fairfield Sentry*, 458 B.R. 665, 674 (S.D.N.Y. 2011) ("Subject

matter jurisdiction over bankruptcy cases is a creature of statute.").  Section 1334 of title 28 of

the United States Code confers upon the district courts "original and exclusive jurisdiction of all

cases arising under title 11."  28 U.S.C. § 1334(a).  The statute also vests the district courts with

"original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in

or related to cases under title 11" *Id.* at § 1334(b).  Pursuant to 28 U.S.C. § 157, the district

courts may "refer" any or all of these proceedings "to the bankruptcy judges for the district."

The United States District Court for the Southern District of New York has done so.  *See*

Amended Standing Order of Reference, No. M10-468, 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012)

(Preska, C.J.).  Once a proceeding has been referred, "[t]he manner in which a bankruptcy judge

may act . . . depends on the type of proceeding involved." *Stern v. Marshall*, 564 U.S. 462, 473

(2011).  In that regard, and "[t]o satisfy constitutional limitations on the subject matter

---

[37]  The McCabe Defendants challenged the Court's subject matter jurisdiction to adjudicate the matters raised in the Complaint and Cross-Complaints.  *See* McCabe Motion to Dismiss Complaint ¶¶ 9, 11; McCabe Motion to Dismiss Campbell Cross-Complaint ¶¶ 5, 9-10; McCabe Motion to Dismiss Gaethers-Langley Cross-Complaint ¶¶ 18-23.

jurisdiction of the Article I bankruptcy courts, bankruptcy jurisdiction is divided into 'core' and

'non-core' jurisdiction." *In re Fairfield Sentry*, 458 B.R. at 674 (citations omitted).

      Core proceedings are those that either "arise under" title 11, or "arise in" cases under title

11. *See* 28 U.S.C. § 157(a), (b). *See also Stern*, 564 U.S. at 476 ("Under our reading of the

statute, core proceedings are those that arise in a bankruptcy case or under Title 11"").

Proceedings that "arise under" the Bankruptcy Code are those "that clearly invoke substantive

rights created by federal bankruptcy law." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108-09

(2d Cir. 2006). *See also In re Adelphia Commc'ns Corp.*, 307 B.R. 404, 413 (Bankr. S.D.N.Y.

2004) (noting that "[a]rising under jurisdiction relates to federal question claims of a particular

type – those federal questions that have their origin in title 11 of the United States Code (i.e., the

Bankruptcy Code), and where relief is sought based upon a right created by title 11.") (internal

quotation marks omitted) (footnote omitted). "[T]he meaning of the statutory language 'arising

in' may not be entirely clear." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010). Still, it is

settled that a bankruptcy court's "arising in" jurisdiction includes matters that "are not based on

any right expressly created by [T]itle 11, but nevertheless would have no existence outside of the

bankruptcy." *Id.* (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). *See also Delaware

Trust Co. v. Wilmington Trust, N.A.,* 534 B.R. 500, 511 (S.D.N.Y. 2015) (noting that "[a] claim

arises in a bankruptcy proceeding if it would have no practical existence *but for* the

bankruptcy.") (internal quotation marks omitted) (quoting *Baker*, 613 F.3d at 351); *Ames Dep't

Stores Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dept. Stores, Inc.),* 542 B.R. 121, 135

(Bankr. S.D.N.Y. 2015) (A claim "arises in" a bankruptcy case if the claim, by its nature, "can

only be brought in a bankruptcy case because it has no existence outside of bankruptcy.").

      Non-core proceedings are those that are not core "but that [are] otherwise related to a

case under title 11." *See* 28 U.S.C. § 157(c)(1). *See also Stern*, 564 U.S. at 477 ("The terms

'non-core' and 'related' are synonymous" (quoting *Collier on Bankruptcy* ¶ 3.02[2], p. 3-26, n. 5

(16th ed. 2010))). "The test for determining whether litigation has a significant connection with

a pending bankruptcy [sufficient to confer bankruptcy jurisdiction] is whether its outcome might

have any conceivable effect on the bankruptcy estate." *Pfizer Inc. v. Law Offices of Peter G.

Angelos (In re Quigley Co., Inc.),* 676 F.3d 45, 53 (2d Cir. 2012) (internal quotation marks

omitted) (footnote omitted) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.

1992)). *Accord Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir.

2011) ("[A] civil proceeding is 'related to' a title 11 case if the action's outcome might have any

conceivable effect on the bankrupt estate." (internal quotation marks omitted)).

Bankruptcy judges may "hear and determine" core matters and, in doing so, "enter

appropriate orders and judgments, subject to [appellate review]." 28 U.S.C. § 157(b)(1). *See

also Executive Benefits Ins. Agency v. Arkison,* ___ U.S. ___, 134 S. Ct. 2165, 2171-72 (2014)

("The statute authorizes bankruptcy judges to 'hear and determine' [core] claims and 'enter

appropriate orders and judgments' on them. § 157(b)(1). A final judgment entered in a core

proceeding is appealable to the district court, § 158(a)(1), which reviews the judgment under

traditional appellate standards, Rule 8013."). The statute contains a non-exclusive list of "core"

proceedings. *See* 28 U.S.C. § 157(b)(2)(A)-(P). In contrast, in non-core "related to" proceedings,

a bankruptcy judge cannot enter a final, appealable order unless all of the parties to such

proceeding consent. 28 U.S.C. § 157(c). Absent such consent, the bankruptcy judge must

"submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. §

157(c)(1). The district court must then review those proposed findings and conclusions *de novo*

and enter any final orders or judgments. *Id.* As the Supreme Court made clear

> Put simply: If a matter is core, the statute empowers the bankruptcy judge to enter
> final judgment on the claim, subject to appellate review by the district court. If a
> matter is non-core, and the parties have not consented to final adjudication by the
> bankruptcy court, the bankruptcy judge must propose findings of fact and
> conclusions of law. Then, the district court must review the proceeding *de novo*
> and enter final judgment.

*Arkison,* 134 S. Ct. at 2172. "Thus a proceeding's core or non-core nature is crucial in bankruptcy cases because it defines both the extent of the Bankruptcy Court's jurisdiction, and the standard by which the District Court reviews its factual findings." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).

Against this framework, the Court analyzes each of the claims and cross-claims asserted against the Defendants to ascertain the scope of its jurisdiction and its authority to enter final orders resolving the motions to dismiss. *Cf. Halper*, 164 F.3d at 838 ("To determine the extent of the Bankruptcy Court's jurisdiction in this case we must examine each of the five claims presented to ascertain if it is core, non-core, or wholly unrelated to a bankruptcy case.").

**The Debtor's Claims Under the Complaint**

The Court first considers whether it has subject matter jurisdiction over the claims asserted by the Debtor against the Defendants in the Complaint. As noted, in Count One, the Debtor asserts that he is seeking damages for alleged violations of the NY DCL. The Complaint does not identify particular sections of the NY DCL and fails to allege the elements of any such claim. In fact, the only mention of the statute is in the caption of Count One of the Complaint. That pleading defect cannot be cured since, as explained below, the Debtor lacks standing to bring claims under the NY DCL and, as such, the Court lacks subject matter jurisdiction to adjudicate them.

Section 544(b)(1) of the Bankruptcy Code permits a

> trustee [to] avoid any transfer of an interest of the debtor in property of any
> obligation incurred by the debtor that is voidable under applicable law by a

> creditor holding an unsecured claim that is allowable under section 502 of this
> title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).  That provision's reference to interests "voidable under applicable law"

includes claims avoidable under state law including the NY DCL.  *See Geron v. Schulman (In re*

*Manshul Const. Corp.)*, No. 96B44080, 96B44079, 97 CIV 8851, 99 CIV. 2825, 2000 WL

1228866, at *43 (S.D.N.Y. Aug. 30, 2000) ("The 'applicable law' upon which the [t]rustee in

this case relies is contained in [NY] DCL §§ 273, 274, 275, and 276."); *Messer v. Bentley*

*Manhattan Inc. (In re Madison Bentley Assocs., LLC),* No. 09-15479, 2015 Bankr. LEXIS 3507,

at *43-44 (Bankr. S.D.N.Y. Oct. 16, 2015) (stating that through § 544(b)(1) "[a] trustee may

avoid any transfer that could have been avoided by an unsecured creditor under the New York

Debtor and Creditor Law [], which sets forth different types of fraudulent conveyances.").

As a result, the Debtor's claim for constructive fraudulent conveyance under the NY DCL in

Count One "arises under" the Bankruptcy Code because it is only brought under 11 U.S.C. §

544(b).  *See Rahl v. Bande*, 316 B.R. 127, 132 (S.D.N.Y. 2004) ("Absent [§ 544(b)(1)], the

[t]rustee would lack standing to bring [a state law fraudulent conveyance] claim . . . .").

However, § 544 speaks to a "trustee's" resort to avoidance powers under state or

applicable non-bankruptcy law; it makes no allowance for a chapter 13 debtor to do so.  *See* 11

U.S.C. § 544(b).  Neither does § 1303 of the Bankruptcy Code.  That provision vests chapter 13

debtors with certain powers that are otherwise reserved for trustees, as follows:

> Subject to any limitations on a trustee under this statute, the debtor shall have,
> exclusive of the trustee, the rights and powers of the trustee under sections 363(b),
> 363(d), 363(e), 363(f) and 363(l) of [Title 11].

11 U.S.C. § 1303.[38]  Except as provided in § 522(h), the Bankruptcy Code makes no provision

for a chapter 13 debtor to exercise a trustee's avoidance powers.  That provision is not relevant to

the relief sought in the Complaint.[39]

In considering whether the Debtor nonetheless has standing to invoke NY DCL in the

Complaint, the case of *Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1

(2000), is instructive.  There, in a converted chapter 11 case, the debtor's workers' compensation

insurer brought an adversary proceeding against a secured creditor pursuant to § 506(c) of the

Bankruptcy Code to surcharge its collateral for the unpaid post-petition insurance premiums,

even though the statue only affords a "trustee" with the power to do so.  The Supreme Court

affirmed a judgment denying that request, holding that § 506(c) does not provide an

administrative claimant of a bankruptcy estate an independent right to seek payment of its claim

from property encumbered by a secured creditor's lien.  In part that Court stated, as follows:

> Petitioner's primary argument from the text of § 506(c) is that "what matters is
> that section 506(c) does not say that 'only' a trustee may enforce its provisions."
> . . .  Petitioner argues that in the absence of such restrictive language, no party in
> interest is excluded. This theory-that the expression of one thing indicates the
> inclusion of others unless exclusion is made explicit-is contrary to common sense
> and common usage. Many provisions of the Bankruptcy Code that do not contain
> an express exclusion cannot sensibly be read to extend to all parties in interest.

*Hartford,* 530 U.S. at 7.  The Bankruptcy Code does not authorize a chapter 13 debtor to "step in

the shoes" of a trustee and pursue avoidance actions pursuant to § 544 of the Bankruptcy Code.

---

[38]  In contrast, chapter 11 debtors-in-possession have standing to exercise avoidance powers as trustees.  *See* 11 U.S.C. § 1107.  *See also Bruce v. RepublicBank-South Austin (In re Bruce),* 96 B.R. 717, 719-20 (Bankr. W.D. Tex. 1989).

[39]  Section 522(h) of the Bankruptcy Code specifically grants debtors standing to avoid a transfer of property of the debtor or recover a setoff pursuant to section 544 of the Bankruptcy Code, to the extent the debtor could have exempted such property if the trustee had avoided the transfer.  11 U.S.C § 522(h).  That right is available to chapter 13 debtors.  *See, e.g., Realty Portfolio, Inc. v. Hamilton (In re Hamilton),* 125 F.3d 292, 297-98 (5th Cir. 1997) (finding that the "[d]ebtor . . . fits the narrow exception under § 522(h) and has standing to seek avoidance of his homestead's foreclosure sale under § 544(a)(3) of the Bankruptcy Code.").

Based upon the plain language of the statute, the Court finds that the Debtor lacks standing to do so. *Cf. In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) (noting that notwithstanding that § 1109(b) of the Bankruptcy Code gives creditors the right to be heard on any matter raised in a chapter 11 case, first mortgagee lacked standing to enforce mandate under § 365(d)(4) of the Bankruptcy Code that debtor assume or reject a non-residential lease of real property of which the debtor was the lessee, within 60 days of the petition date; §1109(b) "was [not] intended to waive other limitations on standing, such as the claimant be within the class of intended beneficiaries of the statute he is relying on . . . .").

The majority of courts that have considered this matter, including courts in this district, have come to the same conclusion.[40] *See, e.g.*, *Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573, 583 (3d Cir. 2005) (applying plain language of the statute and finding the chapter 13 debtor does not have standing to bring avoidance action under §544(b)(1)); *Hansen v. Green Tree Servicing LLC (In re Hansen)*, 332 B.R. 8, 16 (B.A.P. 10th Cir. 2005) (holding "that Chapter 13 debtors lack statutory standing to exercise the trustee's avoidance powers under § 544 [of the Bankruptcy Code]."); *Kain v. Bank of New York Mellon (In re Kain)*, Bankr. No. 08-08404, Adv. No. 10-80047, 2012 WL 1098465, at *9 (Bankr. D. S.C. Mar. 30, 2012) (same); *In re Binghi*, 299 B.R. 300, 306 (Bankr. S.D.N.Y. 2003) (concluding that "overwhelming case law compel the conclusion that Chapter 13 debtors do not have standing to assert trustee's avoidance powers."); *In re Reditt*, 146 B.R. 693, 695-701 (Bankr. D. Miss. 1992) (analyzing case law and

---

[40]  In *Olick v. Parker & Parsley Petroleum Co.*, the Second Circuit considered whether a chapter 13 debtor generally had standing to "litigate causes of action that are not part of a case under title 11," finding that such standing exists. 145 F.3d 513, 515 (2d Cir. 1998). The Court expressly declined to reach the issue of whether a chapter 13 debtor could exercise a trustee's avoidance powers. *Id.* at 516 ("[W]e need not consider, and deliberately express no opinion regarding, whether a Chapter 13 debtor would be able to invoke [a trustee's avoiding] powers in an action to augment the bankruptcy estate.").

agreeing with rationale of those courts "in deciding that the chapter 13 debtor does not have the

power to seek avoidance under Sections 544 and 545 of the Bankruptcy Code.").[41]  *Cf. Stangel v.*

*United States (In re Stangel)*, 219 F.3d 498, 501 (5th Cir. 2000) (finding that based upon the

plain language of the statute, chapter 13 debtor does not have standing to bring avoidance action

under section 545 of the Bankruptcy Code).  Thus, the Court lacks subject matter jurisdiction to

adjudicate the fraudulent conveyance claim in Count One of the Complaint.  *See, e.g.*, *Warth v.*

*Seldin*, 422 U.S. 490, 498 (1975) (noting that standing "is the threshold question in every federal

case, determining the power of the court to entertain the suit.").  For that reason, the Court will

dismiss that claim.  *Hansen*, 332 B.R. at 11 ("If the [a]ppellants lacked standing to bring the lien

avoidance proceeding, the bankruptcy court was without subject matter jurisdiction to determine

the [a]ppellants' complaint.").

The remaining claims asserted by the Debtor in the Complaint (the "Non-NY DCL

Claims") are prepetition claims predicated on state law, non-bankruptcy federal law and/or

---

[41]  The minority position that chapter 13 debtors have the ability to assert trustee avoidance powers is predicated on:
(i) § 103(a) of the Bankruptcy Code which included and made applicable the trustee avoidance powers, including
those under §§ 544, 547, and 548, in chapter 13; (ii) the chapter 13 trustee having a practical and functional role
more administrative in nature, as opposed to being engaged in liquidation and recovery of assets like a chapter 7
trustee; and (iii) the lack of a granting of those avoidance powers exclusively to the trustee.  *See In re Hall*, 26 B.R.
10, 11 (Bankr. M.D. Fla. 1982).  Some courts adopting the *Hall* rationale have done so for perceived practical
considerations.  *See In re Freeman*, 72 B.R. 850, 854-55 Bankr. E.D. Va. 1987) (finding that because "[i]t is the
debtors who determine whether to remain in Chapter 13 . . . it is only logical that they should be extended the
powers possessed by the trustee which work toward enhancing their own bankruptcy estate."); *Russo v. Ciavarella
(In re Ciavarella)*, 28 B.R. 823, 828 (Bankr. S.D.N.Y. 1983) (determining that "the Chapter 13 debtor is the entity
most appropriately stationed to reclaim those avoidable transfers whose recovery would further debtor's
rehabilitative interests under the Chapter 13 plan.").  The courts in *Freeman* and *Ciavarella*, and others, relied, in
large part, on the decision in *Hall*.  *See Freeman*, 72 B.R. at 853-54; *Ciavarella*, 28 B.R. at 827.  However, the
minority position appears to have largely fallen out of favor, most likely because of the Supreme Court's subsequent
holding in *Hartford* concerning the interpretation of the use and meaning of "trustee" in the Bankruptcy Code as a
limiting factor.  It may also be because the court that issued *Hall* itself subsequently receded from that decision.  *See
In re Tillery*, 124 B.R. 127, 128 (Bankr. M.D. Fla. 1991) ("After careful reconsideration of this issue [of whether a
chapter 13 debtor has standing to use a trustee's lien avoidance power], this Court recedes from its early decision in
*In re Hall* [], and is now satisfied that the Chapter 13 debtor lacks the power to use the lien avoidance power of
Section 544 . . . .").  *Accord In re Hannah*, 316 B.R. 57, 62 (Bankr. D. N.J. 2004) (relying in substantial part on
*Hartford* and *Tillery* in finding that chapter 13 debtor lacked avoiding powers under § 544 to avoid mortgagee lien).

common law.[42]  None of them fall within the Court's core, "arising in" or "arising under" subject

matter jurisdiction.  *See, e.g.*, *Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros.*

*Holdings Inc.)*, 502 B.R. 376, 383 (Bankr. S.D.N.Y. 2013) (claim based upon prepetition breach

of contract not within court's core jurisdiction because claim arises under New York law and

could have been brought outside the bankruptcy case); *Ma-Sharda, Inc. v. First Citizens Bank &*

*Trust, Co. (In re Maa-Sharda, Inc.)*, Bankr. No. 14-21380, Adv. P. No. 15-2003, 2015 WL

1598075, at *5 (Bankr. W.D.N.Y. April 9, 2015) (determining that state law "fraud on the court"

cause of action not within court's "core" jurisdiction).

   The Court finds no merit to the Debtor's assertions to the contrary.  As noted, the Debtor

relies in the Complaint on 28 U.S.C. §§ 157(b)(2)(K) and (O) as the grounds for this Court's

exercise of core jurisdiction over the claims asserted therein.  *See* Compl. ¶ 13.  Under §

157(b)(2)(K), core proceedings include "determinations of the validity, extent or priority of

liens[.]"  28 U.S.C. § 157(b)(2)(K).  On or about November 29, 2016, well after he commenced

this lawsuit, the Debtor filed proofs of claim (the "Surrogate Claims") on behalf of BNY (Claim

No. 7) and Ocwen (Claim No. 8).  *See* 11 U.S.C. § 501(c) ("If a creditor does not timely file a

proof of such creditor's claim, the debtor . . . may file a proof of claim.").  The Debtor contends

that the Court has core jurisdiction under § 157(b)(2)(K) to adjudicate the claims in the

Complaint because he "seeks to establish the validity, extent, or priority of lien because [the

Complaint] seeks to establish the settlement of, or right of setoffs against, a debt for which the

secure claims properly appear on the petition."  Statement of Consent at 5, 11.[43]  The Court

---

[42]  The Debtor's reference to § 509 of the Bankruptcy Code in Count Two of the Complaint does not give the Court
core jurisdiction over that claim.  As explained below, § 509 has no application to the claims asserted in the
Complaint.

[43]  "Statement of Consent" refers to the Debtor's Statement of Consent Concerning the Court's Jurisdiction to Enter
a Final Order . . . Pursuant to Federal Rule of Bankruptcy Procedure 7008(a) and the Local Bankruptcy Rule 7008-1
and Memorandum of Law, dated December 2, 2016.  [AP ECF No. 54].  The Debtor submitted it in response to the
Court's scheduling order dated November 22, 2016 [AP ECF No. 42].

understands the Debtor to contend that in asserting the claims for money damages against Ocwen and BNY, he is seeking to establish a right of setoff against the Surrogate Claims. However, § 157(b)(2)(K) encompasses proceedings to determine the validity, extent, or priority of liens on the estate's or the debtor's property as of the commencement of the case. *See, e.g.*, *Shell Materials, Inc. v. First Bank of Pinellas County (In re Shell Materials, Inc.)*, 50 B.R. 44, (Bankr. M.D. Fla. 1985) (determining action to invalidate mortgage on estate property within scope of § 157(b)(2)(K)); *Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.),* 56 B.R. 927, 935 (Bankr. E.D.N.C. 1986) (finding that adversary proceeding seeking to avoid deed of trust encumbering assets of Chapter 11 debtor's estate was core proceeding under § 157(b)(2)(K)). It does not cover cases like this where the debtor is seeking money damages with the expectation that a judgement will give rise to a right of setoff against claims filed in the case.

Although he does not allege it in the Complaint, the Debtor also seems to contend that § 157(b)(2)(C) provides a predicate for the Court to assert core jurisdiction over the claims in the Complaint because the damage claims that he is asserting against BNY and Ocwen are "counterclaims" to the Surrogate Claims. Specifically, in his Statement of Consent, the Debtor asserts, as follows:

> The court [in *Stern v. Marshall*] therefore concluded that "a counterclaim under §157(b)(2)(O) is properly a 'core' proceeding 'arising in a case under' the [Bankruptcy] Code only if the counterclaim is so closely related to [a creditor's] proof of claim that the resolution of the counterclaim is necessary to resolve the allowance or disallowance of the claim itself.
>
> This is precisely the situation in the instant case. Debtor filed [Surrogate Claims] for duplicates [sic] notes on the same underlying note. When Ocwen Loan Servicing, LLC failed to file a Proof of Claim within the statutory period, [Debtor] filed the [Surrogate Claims] for them, allowing a setoff for the amount of the claim in the adversary proceeding, and in anticipation of "cram down" of the remaining balance. Allowance of the claim, and the subsequent "cram down" addresses the exact issue raised in the adversary proceeding.

Statement of Consent at 11-12 (footnote omitted).  Section 157(b)(2)(C) provides that "core

proceedings" include "counterclaims by the estate against persons filing claims against the

estate."  28 U.S.C. § 157(b)(2)(C).  However, the Debtor is misplacing his reliance on the

Surrogate Claims as the predicate for establishing this Court's core jurisdiction under that

section.  "A surrogate claim filed under § 501(c) should not be construed as the equivalent of a

creditor consenting to bankruptcy court jurisdiction over its claim."  *In re Nat'l Cattle Congress*,

247 B.R. 259, 271 (Bankr. N.D. Iowa 2000).  The case of *Marcus Dairy, Inc. v. Belford (In re*

*Naugatuck Dairy Ice Cream Co., Inc.)*, 106 B.R. 24 (Bankr. D. Conn. 1989) is also instructive.

There, a bankruptcy trustee filed a claim on behalf of a creditor and thereafter filed an objection

to that claim and a counterclaim against the creditor.  *Id.* at 27-28.  The trustee argued that the

court had core jurisdiction over the trustee's claim as a counterclaim against the surrogate claim.

*Id.* at 27.  The bankruptcy court rejected that argument.  It noted that the grant of jurisdiction

under § 157(b)(2)(C) "is premised upon implied consent by the creditor to the jurisdiction of the

bankruptcy court."  *Id.* (citation omitted).  It found that "the purported claim was filed merely as

a basis to allege bankruptcy court jurisdiction[]" and that "to construe that procedure as the

equivalent of a creditor consenting to bankruptcy court jurisdiction would ignore the distinction

between core and noncore proceedings and circumvent the jurisdictional framework created in

response to *Marathon*."  *Id.* at 28.  *See also Piombo Props. v. Castlerock Props. (In re*

*Castlerock Props.)*, 781 F.2d 159, 162-63 (9th Cir. 1986) (finding that the creditor's filing of

proof of claim after debtor's assertion of a related claim does not constitute implied consent to

the jurisdiction of the bankruptcy court over the related claim).  Thus, § 157(b)(2)(C) does not

provide a basis for finding core jurisdiction in this case.

       Finally, the Debtor contends that under 28 U.S.C. § 157(b)(2)(O), the Court has core

jurisdiction over the claims in the Complaint because the "Plaintiff-Debtor seeks to address

concerns of liquidation of assets of the estate because it seeks to address an improperly attempted

mortgage foreclosure sale of vacant residential real [property] which appears as property of the

estate on the bankruptcy petition." Statement of Consent at 5, 11. Under that section "core

proceedings" include "other proceedings affecting the liquidation of the assets of the estate or the

adjustment of the debtor-creditor or the equity security holder relationship, except personal

injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(O). As such, it is commonly

referred to as one of the two "catch-all" provisions in § 157(b)(2). *See In re Castlerock

Properties*, 781 F.2d at 161. The other is § 157(b)(2)(A), which vests the bankruptcy court with

core jurisdiction over "matters concerning the administration of the estate." 28 U.S.C. §

157(b)(2)(A). Both were enacted as part of the Bankruptcy Amendments and Judgeship Act of

1984, in the wake of the Supreme Court's holding in *Northern Pipeline Construction Co. v.

Marathon Pipe Line, Inc. (In re Northern Pipeline Construction Co.)*, 458 U.S. 50, 71-72 (1982)

(hereinafter "*Marathon*"). There, the Supreme Court invalidated the broad grant of jurisdiction

to bankruptcy courts under the Bankruptcy Act of 1978 contained in 28 U.S.C. § 1471 (1976 ed.

and Supp.IV) that permitted a bankruptcy court to enter final judgment on a creditor's state law

claim for breach of contract. The court held that "while Congress, pursuant to its power under

the Bankruptcy Clause of the Constitution, U.S. Const., Art. I, § 8, cl. 4, could grant the

bankruptcy courts the right to issue final orders in proceedings that were at the core of

bankruptcy jurisdiction, primarily the restructuring of the debtor-creditor relationship, it could

not give the right to issue such orders in 'private right' claims (e.g., tort and contract), merely

because those claims involved a debtor . . . Those traditional common law claims were reserved

for Article III courts." *Ben Cooper, Inc. v. The Ins. Co. of Pennsylvania (In re Ben Cooper,*

*Inc.)*, 896 F.2d 1394, 1399 (2d Cir. 1990), *vacated and remanded,* 498 U.S. 964, (1990),

*reinstated on remand,* 924 F.2d 36 (2d Cir. 1991).

    The Debtor's successful prosecution of the claims alleged against the Defendants might

"affect[ ] the liquidation of the assets of the [Debtor's] estate." *See Brandt v. 47-49 Charles*

*Street, Inc. (In re 47-49 Charles Street)*, No. 98 CIV 4669, 1999 WL 138929, at *2 (S.D.N.Y.

Mar. 15, 1999) (denying remand of foreclosure action to state court because property to be

foreclosed was sole asset of the debtor which outcome would "likely effect the administration of

the estate in bankruptcy court."). As such, the action arguably falls within the scope of the plain

language of § 157(b)(2)(O). *But see Durso Supermarkets v. D'Urso (In re Durso Supermarkets,*

*Inc.),* 170 B.R. 211, 214 (S.D.N.Y.1994) (rejecting contention that bankruptcy court could exert

core jurisdiction under §157(b)(2)(O) over fraud claim asserted against a creditor, stating that

"[plaintiff]'s claim of fraud may, if successful, enlarge the estate; however, that fact without

more does not 'affect the liquidation of the assets . . . or the adjustment of the debtor-creditor or

the equity security holder relationship'"). However, the Court will not construe the statute so

broadly to encompass the claims alleged in the Complaint, because to do so would conflict with

the holding in *Marathon*.[44] The legislative history of § 157 indicates that Congress intended that

---

[44] At issue in *Marathon* was the scope of the judicial power vested by Congress in bankruptcy courts under the Bankruptcy Act of 1978 (the "1978 Act"). A "'judicial [p]ower' is one to render dispositive judgments." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995) (citation omitted). Article III of the U.S. Constitution vests the "judicial Power of the United States" in "one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, § 1. The judges of those courts are entitled to hold their offices "during good Behaviour" and to receive compensation "which shall not be diminished" during their tenure. *Id.* The judicial power extends "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties" and to other enumerated matters. Art. III, § 2. Thus, "our Constitution unambiguously enunciates a fundamental principle—the 'judicial Power of the United States' must be reposed in an independent Judiciary." *Marathon*, 458 U.S. at 60. *See also Wellness Intern. Network v. Sharif*, 135 S. Ct. 1932, 1951 (2015) (stating that Art. III, §§ 1 and 2 "define the constitutional birthright of Article III judges: to 'render dispositive judgments' in cases or controversies within the bounds of federal jurisdiction.") (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. at 219, 115 S. Ct. 1447 (1995)).

The 1978 Act vested district courts with subject matter jurisdiction over all "cases under title 11," 28 U.S.C. §

'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits

and, as such, "there is no evidence of any Congressional intent to contravene the Supreme Court

holding in *Marathon*." *In re Orion Pictures Corp.,* 4 F.3d 1095, 1102 (2d Cir. 1993) (citations

omitted). In *Orion*, the Second Circuit addressed whether a pre-petition breach of contract claim

by a debtor against a creditor who had not filed a claim in the case was "core" under §

---

1471(a), and all "civil proceedings arising under title 11 or arising in or related to cases under title 11." *Id.* §
1471(b). The 1978 Act also established bankruptcy courts as adjuncts to the district court. *Id.* § 151(a). Judges of
the bankruptcy courts were appointed to office for 14-year terms by the President, with the advice and consent of the
Senate. *Id.* §§ 152, 153(a). They were subject to removal by the "judicial council of the circuit" on account of
"incompetency, misconduct, neglect of duty or physical or mental disability," *id.* § 153(b), and their salaries were
set by statute and were subject to adjustment under the Federal Salary Act, 2 U.S.C. §§ 351–361 (1976 ed. and
Supp.IV); 28 U.S.C. § 154 (1976 ed., Supp.IV). As such, bankruptcy judges, unlike the district court judges, were
not Art. III judges. *See Marathon*, 458 U.S. at 61. Nonetheless, the 1978 Act conferred the bankruptcy court with
jurisdiction over all civil proceedings arising under title 11 or arising in or related to cases under title 11, that was
co-extensive to that of the district court. *See* 28 U.S.C. § 1471(c) (providing that "[t]he bankruptcy court for the
district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on
the district courts."). "Thus, the ultimate repository of the [1978] Act's broad jurisdictional grant [were] the
bankruptcy courts." *Marathon,* 458 U.S. at 54, n.3 (citing 1 W. Collier, Bankruptcy ¶ 3.01, pp. 3-37, 3-44 to 3-49
(15th ed. 1982)).

    The issue before the *Marathon* court was "whether the assignment by Congress to bankruptcy judges of the
jurisdiction granted in 28 U.S.C. § 1471 . . . by the [1978] Act violates Art. III of the Constitution." 458 U.S. at 53.
A plurality of the Court found that it did, at least to the extent that "Congress may not vest in a non-Art. III court the
power to adjudicate, render final judgment and issue binding orders in a traditional contract action arising under
state law, without the consent of the litigants, and subject only to ordinary appellate reviews." *Thomas v. Union
Carbide Agricultural Products Co.*, 473 U.S. 568, 569 (1985) (describing plurality's holding in *Marathon*). In
reaching that determination the plurality held that controversies involving "public rights" may be delegated to non-
Art. III tribunals, whereas matters involving private rights must be resolved by Art. III tribunals. *See Marathon*, 458
U.S. at 69- 70 ("Our precedents clearly establish that *only* controversies [involving public rights] may be removed
from Art. III courts and delegated to legislative courts or administrative agencies for their determination. . . .
Private-rights disputes, on the other hand, lie at the core of the historically recognized judicial power."). From that,
it found that

> the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power,
> must be distinguished from the adjudication of state-created private rights, such as the right to
> recover contract damages that is at issue in this case. The former may well be a 'public right,' but
> the latter obviously is not. Appellant Northern's right to recover contract damages to augment its
> estate is 'one of private right, that is, of the liability of one individual to another under the law as
> defined.'

*Marathon*, 458 U.S. at 71-72 (quoting *Crowell v. Benson*, 285 U.S. 22, 51 (1932)). The public rights doctrine is at
the heart of the core/non-core distinction in § 157(b)(2). *See In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987) ("The
reference in [§ 157] to 'core' proceedings is taken directly from Justice Brennan's description of matters that involve
the peculiar powers of bankruptcy courts. The Act describes non-core proceedings as 'otherwise related', an
apparent reference to Chief Justice Burger's description of the *Marathon* proceeding as 'related only peripherally to
an adjudication of bankruptcy.'").

157(b)(2)(A).  The debtor contended that the resolution of the $77 million claim necessarily

involved a "matter[] concerning the administration of the estate" under §157(b)(2)(A) and, as

such, fell within the court's core jurisdiction.  *Id.*  The court rejected that rationale, finding,

among other things, that such construction of the statute "creates an exception to *Marathon* that

would swallow the rule" that "Congress could not constitutionally empower [a bankruptcy court]

with the authority to adjudicate a state breach-of-contract action, based on a pre-petition contract,

brought by a debtor against a defendant that had not filed a claim with the bankruptcy court."  *Id.*

Here too, "[t]o interpret the language of §157(b)(2)(O) so broadly would render the distinction

between core and non-core claims meaningless."  *See Complete Mgmt. Inc. v. Arthur Andersen,*

*LLP (In re Complete Mgmt., Inc.)*, No. 02 CIV. 1736, 01-03459, 2002 WL 31163878 at \*3

(S.D.N.Y. Sept. 27, 2002) (finding that debtor's lawsuit against its former accountants grounded

in state law claims of negligence, relying on theories of malpractice and breach of fiduciary duty

were not within the bankruptcy court's core jurisdiction).  *See also In re Castlerock Props.*, 781

F.2d at 162 (stating that "a court should avoid characterizing a proceeding as 'core' if to do so

will raise constitutional problems" and concluding prepetition state law contract claims not

within bankruptcy court's core jurisdiction under §157(b)(2)(O)) (citation omitted); *Tultex Corp.*

*v. Freeze Kids LLC,* 252 B.R. 32, 39 (Bankr. S.D.N.Y. 2000) ("Although plaintiff's breach of

contract action can arguably be viewed as a proceeding that affects the liquidation of the assets

of the . . . bankruptcy estate, if this action were regarded as core, then 'virtually any action by a

debtor that would result in a recovery for the estate would be a core proceeding.'" (quoting

*Interconnect Tel. Servs., Inc. v. Farren,* 59 B.R. 397, 400 (S.D.N.Y. 1986))).  Accordingly, §

157(b)(2)(O) does not provide a predicate for core jurisdiction over the claims for damages in the

Complaint.

Although the Court lacks core jurisdiction over the Non-NY DCL Claims, the Court finds

that it can exercise its non-core, "related to" jurisdiction over those claims because they

constitute "causes of action owned by the debtor which become property of the estate pursuant to

11 U.S.C. § 541 . . . ." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995). *See also*

*Florida Dev. Assocs., Ltd. v. Knezevich and Assocs., Inc. (In re Florida Dev. Assocs., Ltd.),*

Bankr. Nos. 04-12033, 04-12034, 04-12035, Adv. No. 08-1380, 2009 WL 393870, at *4 (Bankr.

S.D. Fla. Feb. 4, 2009) (finding debtor's adversary proceeding for damages arising out of alleged

construction defects to balconies of condominium building of which debtor was developer was

within court's related to jurisdiction since action arose prepetition and was estate property on

petition date); *Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.*, 132 B.R. 4, 8

(S.D.N.Y. 1991) (stating that actions being referred to bankruptcy court as core proceedings

would, even if not found to be core, be referred nonetheless as "related to" proceedings based on

claims "owned by the debtor that became property of the estate under section 541."); *Medina-*

*Figueroa v. Heylinger*, 63 B.R. 572, 574-75 (D. P.R. 1986) (finding debtors' medical

malpractice action was "related to" debtors' bankruptcy case under § 1334(b) because "a

debtor's claim for injuries to the person whether the claim is unliquidated or settled at the time of

filing the bankruptcy petition was property of the estate").  Claims owned by a debtor's estate

that would augment that estate for the benefit of creditors fall within the "related to" scope of §

1334(b).  *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP,* 462 B.R. 457, 463

(S.D.N.Y. 2011) (finding that proceedings that would "augment for the benefit of all creditors"

were "related to" the debtor's estate for subject matter jurisdiction purposes under § 1334(b).);

*Goldsmith v. Massad (In re Fiorillo),* 494 B.R. 119, 144 (Bankr. D. Mass. 2013) ("[A]s actions

with the potential to augment the bankruptcy estates, the adversary proceedings fall within the

court's related-to jurisdiction.").

Through their respective counsel, ASIC, Ocwen, and BNY consented to this Court's entry of a final order in this Adversary Proceeding. *See* Letter from Robert W DiUbaldo, dated December 2, 2016 [AP ECF No. 53]; Letter from Jacqueline Aiello, dated November 28, 2016 [AP ECF No. 48]. The Debtor does not so consent. *See* Statement of Consent ¶¶ 1-2. Except for offering a general denial in their memorandum of law, neither McCabe nor Vencer took a position on the matter. Accordingly, pursuant to § 157(c)(1), in resolving the motions to dismiss the Non-NY DCL Claims, and as set forth below, the Court will treat this Memorandum Decision as proposed findings of fact and conclusions of law, subject to the objection procedure in Federal Rule of Bankruptcy Procedure 9033.

## The Claims Under the Cross Complaints

Like the Debtor, the Cross-Claimants lack standing to assert claims under the NY DCL against BNY and Ocwen. *See, e.g.*, *Carey v. Ernst*, 333 B.R. 666, 677-80 (S.D.N.Y. 2005) (affirming the bankruptcy court's holding that creditor lacked standing in chapter 13 case to commence avoidance actions under §§ 547 and 548 of the Bankruptcy Code.). As such, the Court will dismiss those cross-claims for lack of subject matter jurisdiction. *Hansen*, 332 B.R. at 11. The Court also lacks core jurisdiction over the remaining cross-claims asserted in the Cross-Complaints (including Counts Five and Six in the Campbell Cross-Complaint (the "Non-NY DCL Cross-Claims") since "section 1334(b) cannot possibly be applicable to [a] dispute between . . . nonparties to the bankruptcy proceeding. Its domain is limited to questions that arise during the bankruptcy proceeding and concern administration of the bankruptcy estate, such as whether to discharge a debtor." *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994) (citations omitted). *See also Joremi Enter., Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R.

885, 890 (Bankr. S.D.N.Y. 2008) (garden-variety state court claims between non-debtor parties

not within court's core jurisdiction); *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 581-82

(Bankr. E.D.N.Y. 2009) (finding purely state law claims between non-debtors sounding in tort

and contract law at best are related to, non-core matters.).  The Debtor contends that

> "[a]t bottom, the insurance claim in this case asserts that property which is part of
> the estate, and therefore available for distribution to the creditors pursuant to Title
> 11 is improperly not included.  That sort of claim is 'related to a case under title
> 11', because they are suits between third parties that have an effect on the
> bankruptcy estate."

*See* Statement of Consent at 17.  The Court understands the Debtor to be asserting that the Court

has non-core related to jurisdiction over the Non-NY DCL Cross Claims because a determination

of the Cross-Claimants' request for a declaration that the Note and Mortgage have been satisfied

would impact the size of the estate available for distribution to the Debtor's creditors.  That

argument fails because the Court lacks jurisdiction over those cross-claims.  The source of the

Court's power to issue a declaratory judgment is the Declaratory Judgment Act.  *See* 28 U.S.C. §

2201 (the "Declaratory Judgment Act").  *See also Sears, Roebuck and Co. v. O'Brien*, 178 F.3d

962, 964 (8th Cir. 1999) (noting that pursuant to the Declaratory Judgment Act, "the bankruptcy

court has the power to issue declaratory judgments when the matter in controversy regards the

administration of a pending bankruptcy estate.").  However, Section 2201 is procedural, not

jurisdictional.  It grants authority to the courts to issue declaratory judgments in cases over which

it otherwise already has jurisdiction.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667,

671 (1950) (noting that through the Declaratory Judgment Act, "Congress enlarged the range of

remedies available in the federal courts but did not extend their jurisdiction.").  The Court has

neither core nor non-core, related to jurisdiction over the Non-NY DCL Cross-Claims.

Accordingly, the Court will dismiss all of the claims in the Cross-Complaints, including the

requests for declaratory relief, for lack of subject matter jurisdiction.[45]

## DISCUSSION

As a preliminary matter, and before considering the adequacy of the pleadings relating to

the Non-NY DCL Claims, the Court notes that the Debtor cited no case law in the Scott

Opposition to ASIC/Ocwen/BNY Motion to Dismiss Complaint, and made only the following

---

[45] Although not raised by any of the parties, the Court considers whether to exercise supplemental jurisdiction over the claims at issue in the Cross-Complaints.  Section 1367 of Title 28 states, in relevant part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  "This section allows a district court that has original jurisdiction over some claims in an action to exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  *In re Enron Corp.,* 353 B.R. 51, 55 (Bankr. S.D.N.Y. 2006) (citation omitted).  "While not free from doubt, there is authority, including in the Second Circuit, that bankruptcy courts may exercise supplemental jurisdiction."  *Shafferman v. The Queens Borough Public Library (In re JMK Constr. Grp., Ltd.),* 502 B.R. 396, 403 n.4 (Bankr. S.D.N.Y. 2013) (citing *In re Pegasus Gold Corp.,* 394 F.3d 1189, 1195 (9th Cir. 2005); *Lionel Corp. v. Civale & Trovato, Inc. (In re Lionel Corp.),* 29 F.3d 88, 92 (2d Cir. 1994)).

A district court is not required to exercise supplemental jurisdiction over state law claims in all cases.  It may decline to do so when "[it] has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In those circumstances, in determining whether to exercise supplemental jurisdiction, the court must "balance[] the traditional values of judicial economy, convenience, fairness, and comity."  *Kolari v. New York-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims."  *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Cohill,* 484 U.S. at 350 n.7); *see also Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated ..., the federal court should ordinarily dismiss the state claims.").  As discussed above, the Court has non-core related to jurisdiction over the Non-NY DCL claims in Counts One through Four of the Complaint.  However, as is explained below, the Court recommends that pursuant to Rule 12(b)(6), the District Court dismiss each of those claims, without leave to amend.  Accordingly, the Court declines to exercise supplemental jurisdiction over the claims at issue in the Cross-Complaints.

*See, e.g., Merhav Ampal Grp., Ltd. v. Merhav (M.N.F.) Ltd. (In re Ampal-American Israel Corp.),* 545 B.R. 802, 815 (Bankr. S.D.N.Y. 2016) (declining to exercise supplemental jurisdiction under § 1367(c) over unrelated, non-core claims between non-debtor parties because the claim over which the bankruptcy court had original jurisdiction had been dismissed); *Am. Residential Equities, LLC v. GMAC Mortg. LLC (In re Residential Capital, LLC),* No. 12-12020, 2013 Bankr. LEXIS 3045, at *15, n.3 (Bankr. S.D.N.Y. July 30, 2013) (noting that the Court would have, in the exercise of its discretion under § 1367(c), declined to exercise supplemental jurisdiction because underlying federal claims against co-defendant had been dismissed).

incomplete references to the standards governing a Rule 12(b)(6) motion:

> The standard for dismissal of the complaint is granting the pleader every
> favorable inference as to the matters plead, does the complaint set forth a cause of
> action; and

> The standard for the remedy if the court rules that pleader failed to state a cause
> action, is to permit the pleader to amend the complaint.

*See* Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint ¶¶ 3, 5.  He did not

respond to ASIC's and the Mortgagee Defendants' contentions that the Complaint fails to state

claims for (i) conversion; (ii) embezzlement; (iii) violations of NY RPAPL § 1921 and NY

CPLR § 5020; and (iv) breach of contract.[46]  "It is well settled in the Second Circuit that [a]

plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an

abandonment of those claims."  *New York State Clerks Ass'n, v. Unified Court System of the*

*State of New York,* 25 F. Supp. 3d 459, 469 (S.D.N.Y. 2014) (internal quotations omitted)

(citations omitted).  *See also Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland,* No. 09

CIV 4622, 2010 WL 4968247, at *7 (S.D.N.Y. Nov. 24, 2010) ("Ordinarily . . . when a plaintiff

fails to address a defendant's arguments on a motion to dismiss a claim, the claim is deemed

---

[46] Instead, the Debtor focused his opposition on the merits of certain of his claims and the lack of merit to certain of the matters raised in the Mortgagee Defendants Motion To Dismiss Complaint and ASIC Rule 12(c) Motion.  *See generally*, Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint.  As relevant to his claims against the Mortgagee Defendants and ASIC, and among other things, he argues that through the Lucas and Kroll Affidavits, ASIC and the Mortgagee Defendants have introduced triable issues of fact (*id.* ¶¶ 14-16), and that the statute of limitations is no defense to Ocwen and the McCabe Defendants' violations of the FDCPA.  *Id.* ¶¶ 17-23.  Although the Debtor asserts that "New York grants relief for Unfair and Deceptive Practices pursuant to New York General Business Law § 349[,]" *id.* ¶ 24, he failed to address the Mortgagee Defendants' and ASIC's assertions that he did not allege a claim for relief against any of them under that section.  Rather, he argues in support of his claim that ASIC violated NY General Business Law § 349 by introducing new allegations of alleged wrongdoing supported by documents annexed to his Opposition.  *See id.* ¶¶ 24-39; Exs. A, B.  The Debtor did not address ASIC's contention that Count Two fails to state a claim for breach of contract.  Rather, he introduces new allegations that (i) ASIC's charge of the insurance premium to the mortgage account balance constituted a contractual offer and acceptance by the Debtor, Campbell and Gaethers-Langley (*id.* ¶¶ 39-48); and (ii) that ASIC charged forced placed insurance with the intent that consumer borrowers would have no possibility of benefitting from it.  *Id.* ¶¶ 28-38.  The Debtor's opposition also introduces allegations not found in the Complaint that ASIC has engaged in myriad deceptive practices.  *See id.* ¶¶ 50-52 (deception as to existence of policy); ¶¶ 53-55 (deception as to existence of claim); and ¶¶ 56-61 (deception as to payment).  Finally, the Debtor argues the merits of the remedies he seeks in the Complaint against BNY, Ocwen and ASIC.  *See id.* ¶¶ 62-78.

abandoned, and dismissal is warranted on that ground alone."). Reading the Debtor's opposition

in a light most favorable to the Debtor, the Court recommends finding that the Debtor has

abandoned his claims for conversion, embezzlement and violations of the NY RPAPL and NY

CPLR in Counts One and Three of the Complaint, and his breach of contract claim in Count Two

of the Complaint. Accordingly, the Court recommends that those claims be dismissed on that

basis. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 152,

2013 WL 6838899, at *13 (S.D.N.Y. Dec. 27, 2013) ("Plaintiffs did not respond to . . .

arguments with respect to their indemnity claim in their memorandum of law in opposition to the

motion to dismiss. Thus, the indemnity claim is deemed abandoned and dismissed on that

basis."); *Rivera v. Balter Sales Co. Inc.*, No. 14-CV-1205, 2014 WL 6784384, at *3 (S.D.N.Y.

Dec. 1, 2014) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss

claims constitutes an abandonment of those claims."); *Reid v. Ingerman Smith LLP,* 876 F. Supp.

2d 176, 186 (E.D.N.Y. 2012) ("[The plaintiff] does not address [defendant's contention that

plaintiff failed to state aiding and abetting claim] in her opposition brief. The Court thus deems

the claim against [the plaintiff] abandoned, and the motion to dismiss it is granted.").

In any event, the many pleading defects doom the Complaint. Rule 8(a)(2) mandates that

a complaint contains "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2).[47] Although that rule does not prescribe technical forms of

pleading, it is settled that a complaint must be "sufficiently particular to give notice of the matter

in controversy[.]" *Merrin Jewelry Co. v. St. Paul Fire and Marine Ins. Co.*, 301 F. Supp. 479,

481 (S.D.N.Y. 1969). *See also Robbins v. Banner Indus., Inc.*, 285 F. Supp. 758, 760 (S.D.N.Y.

1966) (notice pleading requires "averment of a single set of facts" accompanied by "separate

---

[47] Bankruptcy Rule 7008 makes Rule 8 applicable herein.

counts" setting forth the pleader's legal theories for recovery.).  The Debtor has completely

disregarded that pleading standard since throughout the four Counts of the Complaint, he has

lumped multiple claims for relief together.  What's more, he fails to allege the elements of those

claims, and, in some instances, as with the NY DCL, only mentions the claim in the caption of

the particular Count.

 The Court construes the Debtor's opposition to the motions to include a request for leave

to amend the Complaint, should the Court find that the Debtor has failed to state claims for

relief.  *See* Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint ¶ 5 (noting

that "[t]he standard remedy if the court rules that pleader fails to state a cause of action, is to

permit the pleader to amend the complaint."); Scott Opposition to McCabe Defendants Motion to

Dismiss ¶ 3 (same).  Although Rule 15(a)(2) states that a court should "freely give leave [to

amend] when justice so requires," whether to grant that relief is within the Court's sound

discretion.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  It is well

settled that courts will deny leave to amend when amendment would be futile.  *See Terry v. Inc.*

*Vill. of Patchoque Board of Trustees*, 826 F.3d 631, 633 (2d Cir. 2016) ("Although district

judges should, as a general matter, liberally permit *pro se* litigants to amend their pleadings,

leave to amend need not be granted when amendment would be futile."); *Stephens v. Trump Org.*

*LLC*, 15 Civ. 2217, 2016 WL 4702437, at *6 (E.D.N.Y. Sept. 7, 2016) (noting that leave to

amend a pleading "is properly denied when the amendment would be futile.").  *See also Loreley*

*Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC,* 797 F.3d 160, 190 (2d Cir. 2015)

("leav[ing] unaltered the grounds on which denial of leave to amend has long been held proper,

such as . . . futility.").  An amendment to a pleading is futile "if the proposed claim could not

withstand a motion to dismiss under Rule 12(b)(6)."  *Lucente v. Int'l Business Machines Corp.,*

310 F.3d 243, 258 (2d Cir. 2002).

BNY and Ocwen are correct that the Debtor's claims under the FDCPA, as well as his claims for conversion, embezzlement, and unfair and deceptive trade practices under the NY GBL in Counts One and Three must be dismissed since the Debtor failed to plead any of the elements of those claims against either of them.  *See* Mortgagee Defendants Motion To Dismiss Complaint at 6-14.  It is also true, as they contend, that the Debtor's allegations in support of Count Three fail to state claims against them under NY RPAPL §1921 and NY CPLR §5020.  *Id.* at 16-17.  Moreover, there is merit to ASIC's contentions that the Debtor has failed to plead any of the elements of its alleged breach of contract and as such, Count Two should be dismissed. *See* ASIC Rule 12(c) Motion at 14-16.  Finally, the McCabe Defendants are correct that Count Four should be dismissed, since the Debtor has failed to state claims for relief against either of them.  *See* McCabe Motion to Dismiss Complaint at 3-6.[48]

As discussed below in a claim-by-claim review of the Complaint, the Debtor's problem is not merely that his pleadings are defective and that he has failed to state claims for relief against the Defendants.  It is that as a matter of law, he cannot do so.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with the [plaintiff]'s causes of action is substantive; better pleading will not cure it.").  As such, in this case, "[r]epleading would be futile [and] such a futile request to replead should be denied."  *Id.  See also Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors)*, 550 F.3d 240, 245 (2d Cir. 2008) (denying defendant leave to replead counterclaim for imposition of constructive trust because defendant could not establish that plaintiff was unjustly enriched); *Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 551 B.R. 732, 744-45 (S.D.N.Y. 2016) (affirming dismissal of chapter 11 trustee's

---

[48]  At the hearing on the McCabe Motions to Dismiss on December 22, 2016, the McCabe Defendants withdrew their defenses to the Complaint asserted under Rules 12(b)(2), (4), and (5).

faithless servant's claim against debtor's former employee on the grounds that it was barred by

the *in pari delicto* doctrine, and denying trustee's request for leave to replead complaint to add

allegations that debtor's owners and most senior executives were unaware of criminal scheme

and had they known they would have put a stop to it as futile, since argument was foreclosed by

state law and debtor was itself convicted of criminal activity); *Brady v. Basic Research, L.L.C.*,

101 F. Supp. 3d 217, 238 (E.D.N.Y. 2015) (denying leave to amend where "[p]laintiff's

dismissed claims are either barred as a matter of law or are not achievable based upon the facts,

and, thus, leave to replead will not cure the defects."); *Farzan v. Bridgewater Assocs.*, No. 3:16-

cv-00935, 2017 WL 354685, at *11 (D. Conn. Jan. 24, 2017) (denying leave to amend complaint

to alleged breach of oral contract and a violation of 42 U.S.C. § 1981 because both will "fail as a

matter of law" and, as such, plaintiff "would not benefit from a chance to reframe.").

Accordingly, the Court recommends dismissing those claims and the request for declaratory

judgment without granting the Debtor leave to amend.

Below, the Court reviews the claims underlying each of the Counts in the Complaint.

Count One: Conversion, Embezzlement, Constructive Fraudulent Conveyance (NY Debtor and
Creditor Law), Unfair and Deceptive Trade Practices (NY General Business Law), and Fair Debt
Collection Practices (15 U.S.C. §1692a *et seq.*)

Conversion

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the

right of ownership over goods belonging to another to the exclusion of the owner's rights."

*Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 403–04 (2d Cir. 2006) (internal quotation

marks omitted) (quoting *Vigilant Ins. Co. of Am. v. Housing Auth.*, N.Y. 2d 36, 44 (1995)). *See*

*also Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y. 3d 43, 49-50 (2006) ("A

conversion takes place when someone, intentionally and without authority, assumes or exercises

control over personal property belonging to someone else, interfering with that person's right of

possession."). Thus, to state a claim for conversion, "a plaintiff must allege: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (quotation marks omitted) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)). *See also Channel Marine Sales, Inc. v. City of New York*, 75 A.D.3d 600, 601 (2d Dep't 2010) (noting that to prevail on a claim for conversion, the plaintiff "must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion . . . to the exclusion of the plaintiff's rights.").

It is settled that money, including the proceeds of an insurance policy, can be the subject of a claim for conversion, but only if that money is "specifically identifiable and segregated." *See Lan v. Time Warner, Inc.*, No. 11 CIV. 2870, 2014 WL 764250, at *6 (S.D.N.Y. Feb. 25, 2014). Even assuming, *arguendo*, that ASIC paid the Insurance Proceeds to Ocwen (*see* Compl. ¶ 18), to prevail on his claim that Ocwen and/or BNY converted the Insurance Proceeds, the Debtor must plead and prove that he had an immediate superior right of possession in those proceeds, and that Ocwen and/or BNY exercised unauthorized dominion and control over them. *See Massive Paper Mills v. Two-Ten Corp.*, 669 F. Supp. 94, 95 (S.D.N.Y. 1987). To prove his "immediate superior right of possession," the Debtor must show that the Insurance Proceeds were "contained in a specific, identifiable fund and [were] designated for a particular purpose for [Debtor's] benefit." *Id. See also Republic of Haiti v. Duvalier,* 626 N.Y.S. 2d 472, 475 (App. Div. 1995) (noting that when property allegedly converted is money, "it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a

particular manner."); *Peters Griffin Woodward, Inc. v. WCSC, Inc*., 88 AD 2d 883, 452 N.Y.S.

2d 599, 600 (1st Dept. 1982) ("Money, if specifically identifiable, may be the subject of a

conversion action."). The Debtor has plainly failed to meet that pleading burden. As support for

his claim, the Debtor alleges that by "failing to credit the loan balance account with the

[Insurance Proceeds] . . . Ocwen, claiming to act as servicer for BNY converted, and embezzled

the [Insurance Proceeds] . . . ." Compl. ¶ 37. Further, he says that "[b]y failing to issue a

satisfaction of mortgage and satisfaction of judgment and by seeking to execute an obsolete

judgment of foreclosure and sale after the loan balance had been paid in full, BNY converted and

embezzled the [Insurance Proceeds]." *Id.* ¶ 38. Thus, the Mortgagee Defendants correctly

contend that the claim should be dismissed since it does not state a claim for relief.[49]

There is no point in granting the Debtor leave to replead his conversion claim. He did not

name any fund or trust in which the Insurance Proceeds were deposited, and there was none.

Since the proceeds were not held in trust or in "specifically identifiable fund," they cannot be the

subject of a conversion action. *See Lan*, 2014 WL 764250, at *6. Moreover, the Debtor has not,

and cannot, allege that he had "ownership, possession or control" over the Insurance Proceeds,

prior to the alleged conversion, or that Ocwen and/or BNY exercised unauthorized dominion and

control over those proceeds. Ocwen, as mortgagee, is named on the Policy, and, as such, has an

interest in the Insurance Proceeds. *See EverHome Mortg. Co. v. Charter Oak Fire Ins. Co.*, No.

07-CV-98, 2012 WL 868961, at *5 (E.D.N.Y. Mar. 14, 2012) ("If the policy . . . is issued to a

mortgagee and mortgagor 'as their interests may appear,' then the mortgagee obtains a vested

legal interest in the contract.").[50] Further, in executing the Mortgage, the Debtor expressly

---

[49]  The Debtor has not included ASIC in the conversion claim.

[50]  The Policy provides in the event of paying out on a loss that "[l]oss will be made payable to you and mortgagee

consented to BNY's retention of the proceeds.[51]  Under New York law, "actual consent or

acquiescence" is a complete defense to a claim of conversion.  *See Knight v. Del. & Hudson Co.*,

165 N.Y.S. 583, 584 (1st Dep't 1917); *accord B&C Realty, Co. v. 159 Emmut Props. LLC*, 966

N.Y.S.2d 402, 405 (1st Dep't 2013) (dismissing conversion claim where complaint "tacitly

concedes that possession [of the allegedly converted property] was authorized").

Accordingly, the Court recommends dismissing the claim for conversion, without leave

to amend.[52]

Embezzlement

Federal law defines "embezzlement" as the "fraudulent appropriation of property by a

person to whom such property has been entrusted, or into whose hands it has lawfully come."

*Moore v. United States,* 160 U.S. 268, 269, 16 S. Ct. 294, 295, 40 L. Ed. 422 (1895).  *See also*

---

*as their interests appear*, either by a single instrument so worded or by separate instruments payable respectively to you and the mortgagee, at the Company's option."  *See* Compl. Ex. B, Policy, Conditions, ¶ 12 (emphasis added). The Policy further provides in the Mortgage Clause that: (i) "[i]f a mortgagee is named in this policy, any loss payable under the policy shall be paid to the mortgagee and you, *as interests appear*," and (ii) the insurer may still pay the mortgagee even if it denies a claim by the insured.  *Id.* at ¶ 15 (emphasis added).

[51]  In relevant part, the Mortgage addresses the disposition of Insurance Proceeds, as follows:

> Unless Lender and [the mortgagor] otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender will be used to repair or restore the damaged Property. . . During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been competed to Lender's satisfaction. . . .  If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument.  Such Insurance Proceeds will be applied in the order provided for in Section 2.  If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

Aiello Cert. Ex. B, Mortgage ¶ 5.

[52]  The Court accords no weight to the Debtor's unsupported allegation that "[a]pparently, Ocwen forged the signature of Barbara Campbell onto the check."  Compl. ¶ 31.  The statement is entirely speculative.  *See Twombly*, 550 U.S. at 555 ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004))).

*Spiegel v. Levine*, 161 A.D. 764, 768 (1st Dep't 1914) (Barrett, J., concurring) (delineating the elements of common law embezzlement as: (1) a breach of duty or trust in respect of money, property or effects in a party's possession that belongs to another, and (2) the intentional wrongful or fraudulent appropriation of such money, property or effects).[53]

The Debtor alleges that Ocwen embezzled the Insurance Proceeds when it failed to apply them in satisfaction of the Loan balance, and that BNY embezzled them when it failed to issue a satisfaction of the Mortgage and the Judgement of Foreclosure. Compl. ¶¶ 37-38.[54]  However, as already noted, the Insurance Proceeds did not belong to the Debtor and he did not entrust them to the Mortgagee Defendants. They had a right to possess the proceeds and to dispose of them in accordance with the terms of the Mortgage. The Debtor has not stated and cannot state a claim of embezzlement against the Mortgagee Defendants.

Accordingly, the Court recommends dismissing the embezzlement claim, without leave to amend.

Fair Debt Collection Practices

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir.

---

[53]  The Court assumes that the Debtor is asserting the claim of embezzlement under common law because the Complaint did not indicate which state's law is applicable. New York does not recognize a private claim for embezzlement; rather, New York's penal law codifies embezzlement as grand larceny. *See* New York Penal Law § 155.05-Larceny; defined. It is instructive to note that in New York, the crime of grand larceny by embezzlement does not generally include a "refusal to pay a valid debt." *See People v. Yannett*, 49 N.Y.2d 296, 301-02 (1980) (dismissing indictment against defendant because money at issue was not property belonging to alleged victims and was not entrusted to defendant to hold on behalf of those alleged victims.).

[54]  The Debtor did not include ASIC or the McCabe Defendants in the embezzlement claim and it plainly has no application to them.

2013) (quoting 15 U.S.C. § 1692(e)); *see also Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.

2002) (noting that "[t]he FDCPA was passed to protect consumers from deceptive or harassing

actions taken by debt collectors."). "To accomplish these goals, the FDCPA creates a private

right of action for debtors who have been harmed by abusive debt collection practices."

*Benzemann v. Citibank*, 806 F.3d 98, 100 (2d Cir. 2015) (citing 15 U.S.C. § 1692k). The Debtor

did not cite any specific provision of the FDCPA in support of his claim. However, it seems

clear that he is relying on § 1692e(2) as against the Mortgagee Defendants since his complaint is

that they continued the foreclosure process by issuing a Notice of Sale even though the

underlying indebtedness had been satisfied. *See* Compl. ¶¶ 38, 39.[55]

The threshold requirements for relief under the FDCPA are: (1) the plaintiff must be a

"consumer," (2) the defendant must be a "debt collector," and (3) the defendant must have

committed some act or omission in violation of the FDCPA. *See Scarola Malone & Zubatov*

*LLP v. Verizon Commc'ns, Inc.*, No. 14-CV-4518, 2015 WL 3884211, at *4 (S.D.N.Y. June 24,

2015) (citing 15 U.S.C. § 1692e-f)).[56] The Debtor has not satisfied his pleading burden since he

---

[55] Section 1692e(2) of the FDCPA states, as follows:

> A debt collector may not use false, deceptive, or misleading representations or means in
> connection with the collecting of any debt. Without limitation the general application of the
> foregoing, the following conduct is a violation of this section:
>
> (2) the false representation of –
>
> (A) The character, amount or legal status of any debt . . . .

[56] Not all provisions of the FDCPA require the offending action to be against a "consumer." *See Sibersky v. Borah,
Goldstein, Altschuler & Schwartz, P.C.*, No. 99-3227, 2000 WL 1448635, at *5 (S.D.N.Y. Sept. 28, 2008)
(indicating that claims asserted under § 1692e(5) may be brought by parties that are not "consumers" under that
statute because the provision is not limited to protecting consumers). Even if the Debtor need not allege that he is a
"consumer," the Complaint nonetheless fails to state a claim under the FDCPA against either Ocwen or BNY, since,
as explained below, BNY is not a "debt collector" and the conduct the Debtor complains of falls outside the scope of
the FDCPA.

failed to allege any of the elements of a claim under the FDCPA.[57]  He should not be granted

leave to attempt to do so since, as explained below, he is not a "consumer" and BNY is not a

"debt collector" for purposes of the FDCPA, and because the alleged bad acts of the Mortgagee

Defendants fall outside of the scope of the FDCPA.[58]

Under the FDCPA, a "consumer" is "any natural person obligated or allegedly obligated

to pay any debt."  15 U.S.C. § 1692a(3).[59]  The debt arising under the Loan is at issue here.  It is

undisputed that the Debtor did not sign the Note and that he received a discharge from personal

liability on the Mortgage in his Chapter 7 case.  He has no personal liability under the Judgment

of Foreclosure since the state court entered it prior to his receipt of his discharge in bankruptcy.[60]

Thus, he cannot qualify as a "consumer" and, as such, is not entitled to relief under the FDCPA.

*See, e.g.*, *Lachi v. GE Capital Bank*, 993 F. Supp. 2d 1228, 1232 (S.D. Cal. 2014) (dismissing

---

[57]  The FDCPA has a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d).  The Mortgagee Defendants contend that since the claims in the Complaint stem from their alleged receipt of the Insurance Proceeds and since the Complaint alleges that Ocwen received those proceeds on June 22, 2014 (Compl. ¶ 19), it follows that the Complaint is time barred because the statute of limitations lapsed on "July 22, 2016." *See* Mortgagee Defendants Motion To Dismiss Complaint at 6.  The Mortgagee Defendants' reference to "July 22, 2016" is erroneous since it is more than two years after June 22, 2014.  The Court understands the Mortgagee Defendants to assert that the statute of limitations lapsed on Jun 22, 2015.  The Court does not credit that argument since the reference in the Complaint to June 22, 2014 is clearly a typographical error.  It is undisputed that the fire occurred on December 31, 2014.  The Mortgagee Defendants' reference to a FDCPA statute of limitations claim expiration in 2016 for an act the Debtor contended occurred in 2014 is clearly a typographical error.

[58]  The Debtor does not allege that ASIC violated the FDCPA.  Nor could he, as it is undisputed that ASIC only acted as the insurer of the Property.  As discussed below, in Count Four of the Complaint, he alleges that the McCabe Defendants violated the FDCPA.

[59]  The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. *Id.* § 1692a(5).  "Debt" can include "[a]n obligation to make mortgage payments, as well as fees, penalties, and interest on that mortgage" under the FDCPA. *In re Yarney v. Ocwen Loan Servs.*, LLC, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013).

[60]  The terms of the Judgment of Foreclosure make clear that it is not a money judgment as against the Debtor or either of the Cross-Claimants.  It specifically states that BNY may file a motion to seek a deficiency judgment. *See* Compl. Ex. A, Judgment of Foreclosure p. 4.  The Debtor has not pleaded that such motion has been filed in the State Court Action.  Even if it had been, the Debtor's discharge in his prior case would absolve him of any personal liability regardless.

FDCPA claims under §§ 1692c(a)(2) and 1692c(c) for failure to plead plaintiff was "consumer");
*Christy v. EOS CCA*, 905 F. Supp. 2d 648, 653 (E.D. Penn. 2012) (finding father of adult debtor
was not a consumer under FDCPA and thus lacked standing to assert claim under § 1692c(b));
*Sibersky*, 2000 WL 1448635, at *5 (dismissing FDCPA claims asserted under §§ 1692e(11) and
1692g because plaintiff was not a "consumer" under FDCPA).

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of
interstate commerce or the mails in any business the principal purpose of which is the collection
of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or
due or asserted to be owed or due another."  *See* 15 U.S.C. § 1692a(6).  That otherwise broad
definition is subject to a significant limitation.  It excludes "any person collecting or attempting
to collect any debt owed or due or asserted to be owed or due another to the extent such activity
... concerns a debt which was not in default at the time it was obtained by such person."  *Id.* §
1692a(6)(F).  According to the report of the United States Senate, Committee on Banking,
Housing, and Urban Affairs on the FDCPA, "[t]he committee does not intend the definition [of
debt collector] to cover ... mortgage service companies and others who service outstanding debts
for others, so long as the debts were not in default when taken for servicing."  *See* S. Rep. No.
95–382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696.  BNY acquired the Loan
before it went into default.  *See Scott*, 2015 U.S. Dist. LEXIS 187978, at *2-3.  As such, by
definition, BNY is not a "debt collector" and is not subject to regulation under the FDCPA.  *See
Muniz v. Bank of America, N.A.*, No 11 Civ. 8296, 2012 WL 2878120, at *3 (S.D.N.Y. 2012)
("[W]here the debt at issue was not in default at the time it was obtained by the defendant, the
defendant, in seeking repayment, is not a "debt collector" and is not subject to regulation under
the FDCPA.").  *See also Ines v. Countrywide Home Loans, Inc.,* No. 08cv1267, 2008 WL

4791863, at *2 (S.D. Cal. Nov. 3, 2008) ("To state a claim for violation of the FDCPA, a

plaintiff must allege that the defendant is a 'debt collector' collecting a 'debt.'"); *Feldman v.*

*Sanders Legal Grp.*, 914 F. Supp. 2d 595, 599 (S.D.N.Y. 2012) ("[A] defendant can only be held

liable for violating the FDCPA if he is a 'debt collector' within the meaning of the Act."); *Schuh*

*v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (noting that "[t]he

relevant provisions of the FDCPA apply only to the activities of a 'debt collector[]'") (citing 15

U.S.C. §§ 1692e, 1692f, 1692g).  Although the Mortgagee Defendants contend that Ocwen,

likewise, is not a "debt collector," the record is not clear on when Ocwen assumed its role as loan

servicer.[61]

The actions that the Debtor says the Mortgagee Defendants took in connection with the

foreclosure process fall outside the scope of the FDCPA.  "The FDCPA imposes liability only

when an entity is attempting to collect debt."  *Ho v. ReconTrust Co., NA*, 840 F.3d 618, 621 (9th

Cir. 2016).  For these purposes, "the word 'debt' is synonymous with 'money.'"  *Id.*  Under the

FDCPA, "the protection of an interest in real property is not the same as collecting a debt."

*Laurent v. Bank of America, N.A.*, Case No. 2:14-CV-863, 2017 WL 68622, at *3 (D. Nev. Jan.

5, 2017).  Accordingly, "the majority rule [is] that 'the enforcement of a security interest through

foreclosure proceedings that do not seek monetary judgments against debtors is not debt

collection for purposes of the FDCPA.'"  *Carlin v. Davidson Fink LLP*, No. 13-CV-6062, 2015

WL 5794250, at *4 (E.D.N.Y. Sept. 30, 2015) (quoting *Boyd v. J.E. Robert Co.*, No. 13-CV-

6062, 2013 WL 5436969, at *9 (E.D.N.Y. Sept. 27, 2013) (hereinafter *Boyd II*) (collecting

---

[61] In his opposition, the Debtor, for the first time, asserts that Ocwen became the loan servicer for BNY after the Loan was in default, and, as such, is a "debt collector" under the FDCPA.  *See* Scott Opposition to ASIC/Ocwen/BNY Motion to Dismiss ¶ 23.  He provided no support for that assertion, and the Court does not credit the allegation.  Moreover, and as explained below, the Debtor cannot state a claim against Ocwen under the FDCPA because Ocwen did not engage in collection activities barred by the statute.

cases)), *vacated on other grounds*, 852 F.3d 207 (2d Cir. 2017).  The Debtor's FDCPA-based

claim against the Mortgagee Defendants stems from their continuation of the foreclosure process

through the issuance of the Notice of Sale.  *See* Compl. ¶ 39.  They generated that notice in

furtherance of the foreclosure action against the Property (*see* Compl. ¶ 19), not the collection of

money from the Debtor.[62]  *See Hill v. DLJ Mortgage Capital, Inc.*, 15-CV-3083, 2016 WL

5818540, at *7 (E.D.N.Y. Oct. 5, 2016) (finding that actions necessarily taken in connection with

"attempts to enforce [a] security agreement ending the foreclosure sale" are not actions "taken in

connection with the collection of the debt evidenced by [a note].").  Thus, those actions fall

outside the scope of the FDCPA.  *See id.* at *9; *Carlin*, 2015 WL 5794250, at *4; *Laurent*, 2017

WL 68622, at *3.

Accordingly, for all of those reasons, the Debtor has not and cannot state a claim for

relief under the FDCPA against either BNY or Ocwen.  The Court recommends dismissing that

claim, without leave to amend.

<u>Unfair and Deceptive Trade Practices</u>

The Complaint only mentions the NY General Business Law in the caption of Count

One.  Thus, it does not allege the elements of a claim under the NY GBL.  However, in his

opposition, the Debtor argues that the Complaint states a claim for relief against the Defendants

under NY GBL § 349.  *See* Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss

Complaint ¶ 24.  "Section 349 of the New York General Business Law was intended to be a

consumer protection statute."  *Teller v. Bill Hayes, Ltd.,* 213 A.D.2d 141, 145, 630 N.Y.S.2d 769

---

[62]  The Notice of Sale does not contain any request or demand for the payment of any sum of money by the Debtor, or any other party.  It merely provides information about the date and time of a scheduled foreclosure sale and advises that the sale be conducted in accordance with the terms of the Judgment of Foreclosure.  *Accord Carlin v. Davidson Fink LLP*, 852 F.3d 207, 214-15 (2d Cir. 2017) (letter containing payoff statement not sent in connection with, or referencing, foreclosure proceeding may constitute an attempt to collect a debt).

(N.Y. App. Div. 1995).  As such, it makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of service in [New York]."  N.Y. Gen. Bus. Law § 349(a).  It also provides a cause of action to "any person who has been injured by reason of any violation" of the Act, and provides for the recovery of actual damages.  *Id.* § 349(h).[63]

To state a claim under NY GBL § 349, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result thereof.  *See PB Americas Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 251 (S.D.N.Y. 2010) (citations omitted).  "Whether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).  Thus, to be actionable under § 349, "[the] deceptive practice . . . need not reach the level of common law fraud[.]"  *Id.* (citation omitted).  However, to recover under the statute, "a plaintiff must prove 'actual' injury . . . though not necessarily pecuniary harm."  *Id.* (citations omitted).  "The typical violation contemplated by the statute involves an individual consumer

---

[63]  Sections 349(a) and (h) of the NY GBL state, as follows:

    a)   Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

             *              *              *              *

    h)   In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

N. Y. Gen. Bus. Law § 349(a), (h).

who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Genesco Entm't v. Koch,* 593 F. Supp. 743, 751 (S.D.N.Y. 1984).

The Debtor does not mention BNY at all in support of his claim under the NY GBL, and merely states in a conclusory fashion that "Ocwen engages in a pattern, course, and conduct of unfair and deceptive trade practices, including, but not limited to, failing to credit consumer (borrowers) with amounts which should properly offset the balance on the account." Compl. ¶ 29. He has failed to allege "facts from which a reasonable inference can be drawn that [Ocwen's] practices impact consumers at large, or indeed a single consumer other than himself." *Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460, 2015 WL 5521769, at *11 (S.D.N.Y. Sept. 17, 2015). Consequently, "he does not state a plausible claim to relief and his § 349 claim must be dismissed as to [Ocwen]." *Id.* (dismissing claim brought under NY GBL § 349 based on wholly conclusory and unsupported generalized allegation). Moreover, the Debtor cannot plead actual injury under § 349. His personal obligations under the Mortgage were discharged in his Chapter 7 case. Consequently, Ocwen's alleged failure to apply payments to a loan balance for which he has no personal liability could not have injured him. Accordingly, the Court recommends that the claim under NY GBL § 349 against Ocwen be dismissed, without leave to replead.

The same holds true for Debtor's claim against ASIC. In support of that claim, the Debtor baldly asserts that

> ASIC engages in a pattern, course, and conduct of unfair and deceptive trade practices, including, but not limited to, charging consumers for forced placed insurance for policies (1) which name as the consumer (borrower) beneficiary, individual(s) who do not own any right, title, or interest in the "insured" premises and (2) which fail to name as the consumer (borrower) beneficiary, individual(s) who were party to the underlying indebtedness and/or who held right, title, and

interest in the property by reason of the underlying indebtedness.

Compl. ¶ 26.  The Complaint plainly fails to state a claim against ASIC that is plausible on its face, or otherwise.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. at 678.  As previously noted, the Debtor alleged facts in his opposition to the ASIC Rule 12(c) Motion to the effect that authorities in Kansas, Massachusetts, Colorado, Florida and Connecticut have sanctioned ASIC for its alleged bad acts.  *See* Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint ¶¶ 25, 26, 62-69; Exs. A and B.  As already noted, under Rule 12(b)(6), the Debtor's new allegations contained in his opposition cannot salvage the Complaint.  *See* discussion, *supra*; *see also O'Brien v. Nat'l Prop. Analysts Partners,* 719 F. Supp. 222, 229 (S.D.N.Y. 1989).  Nor would they if the Court granted the Debtor leave to amend the Complaint to include those allegations. "[Section 349] was meant to empower consumers; to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses. It was not intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract." *Teller,* 213 A.D.2d at 148, 630 N.Y.S.2d 769.  That is precisely what the Debtor is attempting to do.  *See*, *e.g*., Scott Opposition to ASIC/Ocwen/BNY Motions to Dismiss Complaint ¶ 40. Accordingly, the Court recommends dismissing the Debtor's claim against ASIC for unfair trade practices, without leave to amend.

Count Two:  Breach of Contract, Violation of 11 U.S.C. § 509(b)(2) Prohibiting Subrogation To Compensated Insurer

In Count Two, the Debtor asserts that by charging the forced placed insurance premium to the Mortgage, ASIC contracted with the Debtor, Campbell and Gaethers-Langley to insure them against casualty losses and had a "legal duty" to pay the Insurance Proceeds to them.  He says ASIC breached that contract by failing to ensure the security of the "payout check," and by

failing to provide them with the benefits of the Policy.[64]

Before turning to those contentions, and as a preliminary matter, the Court addresses the

Debtor's allegations in Count Two relating to § 509 of the Bankruptcy Code.  Specifically, he

asserts that

> 11 U.S.C. 509 [sic] provides that the debtor [in this context, American Security
> Insurance Company] would otherwise be subrogated to the right of "such creditor:
> [in this context, Ocwen Loan Servicing, LLC], but 11 U.S.C. 509(2) [sic]
> prohibits such treatment because American Security Insurance Company received
> compensation for providing security. [sic] (for $5,998 forced placed lending fee
> for single year of coverage, please see invoice included in Exhibit B).

Compl. ¶ 32 (bracketed language in original).  The Debtor misplaces his reliance on § 509; it has

no application to the claims in the Complaint.  In relevant part, § 509(a) of the Bankruptcy Code

states that "an entity that is liable with the debtor on . . . a claim of a creditor against the debtor,

and that pays such claim, is subrogated to the rights of such creditor to the extent of such

payment."  11 U.S.C. § 509(a).  Thus, it codifies the common law doctrine of equitable

subrogation for a co-obligor of a debtor who pays a creditor's claim post-petition.  *See Aetna*

---

[64]  In support of Count Two, the Debtor asserts:

> ASIC had a legal duty to pay out on the insurance proceeds to the Debtor and the Co-Debtors,
> which duty ASIC breached, damaging Debtor thereby; and

> By reason of charging the premium against Barbara Campbell, Marlene Gaethers-Langley, and
> Phillip Scott for the forced placed insurance, ASIC contracted to insure them in the amount of the
> mortgage in the event of a casualty loss.

Compl. ¶¶ 34, 35.  From that he further contends:

> By reason of issuing the forced insurance policy in fewer than every one of the consumer
> (borrowers), by failing to take adequate steps to ensure the security of the payout check; and by
> failing to provide any of the consumer (borrowers) with the benefit for which the policy otherwise
> should have entitled the consumer (borrowers), ASIC breached its contract to each of Barbara
> Campbell, Marlene Gaethers-Langley, and Phillip Scott to the possibility of future damages in the
> form of demand for contribution and/or indemnification by his Co-Debtors.

*Id.* ¶ 36.

*Cas. & Sur. Co. v. Clerk, U.S. Bankruptcy Court (In re Chateaugay Corp.),* 89 F.3d 942, 947 (2d Cir. 1996). *See also Stephenson v. Salisbury (In re Matter of Cortland Corp.)*, 967 F.2d 1069, 1078 (5th Cir. 1992) (noting that "§ 509(a)'s right of subrogation has meaning *only* if the payment is made post-petition; otherwise there would be nothing to subrogate because a *pre*-petition payoff to the creditor would leave the creditor with no claim against the estate"); *Brown v. Rust (In re Rust),* 510 B.R. 562, 569 n.2 (Bankr. E.D. Ky. 2014) ("[I]n order for a co-obligor to exercise subrogation rights under § 509, the co-obligor must pay the claims of a 'creditor' (i.e., an entity that has a right of payment from the debtor as of the petition date).").  In this way, § 509 is designed to provide a remedy to a co-obligor of a debtor whose claims against the debtor for contribution, reimbursement or subrogation otherwise would be discharged.  *See* 4 *Collier on Bankruptcy*, ¶ 509.01, p. 509-3 (16th ed. 2015) (hereinafter *Collier*).  Accordingly, "section 509 acts as a narrow, equitable backstop to ensure that a codebtor will receive some distribution (specifically the original creditor's distribution) from the debtor's estate if the codebtor pays a creditor's claim."  *Prim Capital Corp. v. May (In re May*), Bankr. No. 05-10521, Adv. No. 05-1098, 2006 WL 4458360, at *6 (Bankr. N.D. Ohio, Aug. 14, 2006*), aff'd* 368 B.R. 85 (B.A.P. 6th Cir. 2007).  Section 509(b)(2) offers an exception to that general rule by providing that the creditor who pays a claim on which it is liable with the debtor is not subrogated to the rights of that creditor, "to the extent that . . . as between the debtor and such entity, such entity received the consideration for the claim held by such creditors."  11 U.S.C. § 509(b)(2).  *See also* 4 *Collier*, ¶ 509.03[4], p. 509-9 (Section 509 "implements the public policy . . . to permit subrogation of those secondarily liable with the debtor but to deny subrogation where the paying co-obligor is merely paying its own debt.").  Section 509 addresses issues between a debtor and his co-debtor when the co-debtor has paid the creditor's debt.  *See id.* at ¶ 509.02[2], p. 509-5

("Section 509 is chiefly aimed at claims of sureties, guarantors and co-makers, although these

terms do not appear in the text.").  Contrary to the Debtor's assertion, ASIC and Ocwen are not

"debtors" or "co-debtors" for purposes of § 509 of the Bankruptcy Code.  Accordingly, that

provision is simply not relevant to the subrogation rights among them and is not applicable to the

relief that the Debtor is seeking in the Complaint.

In New York, a breach of contract action requires proof by the plaintiff of: (i) a contract;

(ii) performance of that contract by one party; (iii) breach of the contract by the other party; and

(iv) damages resulting from that breach.  *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522,

525 (2d Cir. 1994).  Accordingly, to survive a motion to dismiss a breach of contract claim,

among other things, the Debtor "must set forth the terms of the agreement upon which liability is

predicated."  *Window Headquarters, Inc. v. MAI Basic Four, Inc*., Nos. 91 Civ. 1816, 92 Civ.

5283, 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993).  *See also Berman v. Sugo LLC,* 580 F.

Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Although it is not necessary for each element to be pleaded

individually, a claim that fails to allege facts sufficient to show that an enforceable contract

existed between the parties is subject to dismissal.") (citation and internal quotation omitted);

*Mayes v. Local 106, Int'l Union of Operating Engineers,* 739 F. Supp. 744, 748 (N.D.N.Y. 1990)

("A complaint . . . in a breach of contract action must, among other things, set forth the terms of

the agreement upon which liability is predicated.").  The Debtor has not pointed to a specific

contract or contract provision underlying his breach of contract claim.  Rather, as noted, he states

that "[b]y reason of charging the premium against Barbara Campbell, Marlene Gaethers-

Langley, and Phillip Scott, for the forced placed insurance, ASIC contracted to insure them in the

amount of the mortgage in the event of a casualty loss."  Compl. ¶ 35.  As such, the Debtor

contends that ASIC "had a legal duty to pay the insurance proceeds" to him, Campbell and

Gaethers-Langley, "which duty [ASIC] breached." *Id.* ¶ 34.  However, "[s]tating in a conclusory

manner that an agreement was breached does not sustain a claim of breach of contract." *Berman,*

580 F. Supp. 2d at 202; *see also Person v. Hewlett-Packard Co.*, Index No.: 601614/08, 2009

N.Y. Misc. LEXIS 5312, at *4 (Sup. Ct. Jan. 7, 2009) (slip op.) ("In order to defeat a motion to

dismiss a breach of contract claim, the complaint must allege, in non-conclusory language, the

essential terms of the contract and which provision was breached." (citing *Sheridan v. Trs. of*

*Columbia Univ.*, 296 A.D.2d 314, 745 N.Y.S.2d 18 (1st Dep't 2002)); *City of Syracuse v. Loomis*

*Armored US, LLC*, No. 5:11-cv-00744, 2012 WL 88332, at *5 (N.D.N.Y. Jan. 11, 2012)

(dismissing breach of contract claim based upon plaintiff's "vague and conclusory" allegations).

Accordingly, the Court recommends that pursuant to Rule 12(c), ASIC be awarded judgment on

the pleadings dismissing Count Two of the Complaint.  *See, e.g.*, *Posner v. Minnesota Mining &*

*Mfg. Co.,* 713 F. Supp. 562, 563 (E.D.N.Y. 1989) (dismissing a breach of contract claim, brought

by *pro se* plaintiffs, noting that "[a]lthough the existence of a contract is alleged, plaintiffs fail to

set forth any specific information as to when the agreement was made, the terms of the

agreement upon which liability is predicated, or any other evidence supporting the formation of

an agreement"); *Window Headquarters,* 1993 WL 312899, at *3 (denying a breach of contract

claim where plaintiff failed to plead the existence of a contract between the parties, alleged only

that the lenders "agreed to advance funds," and failed to plead the terms of the contract); *Banco*

*Espirito Santo de Investimento, S.A. v. Citibank, N.A.,* No. 03 Civ. 1537, 2003 WL 23018888, at

*4-5 (S.D.N.Y. Dec. 22, 2003) (dismissing a breach of contract claim where insufficient facts

were alleged to show an oral agreement existed and letter of intent contemplated a final

agreement in writing); *see also Rouse v. Elliot Stevens, Ltd*., 13-CV-01443, 2016 WL 8674688,

at *4 (S.D.N.Y. June 24, 2016) (granting Rule 12(c) motion for judgment in favor of the

defendants on plaintiff's breach of contract claim for having being time barred).

ASIC argues that the Debtor has not established and cannot establish the existence of a contract between ASIC and the Debtor, and that this lack of contractual privity bars the Debtor's breach of contract claim. *See* ASIC Rule 12(c) Motion at 14. The Debtor is not party to the Policy and cannot point to any agreement with ASIC obligating ASIC to pay him the Insurance Proceeds. Indeed, the Debtor's premise that ASIC charged the premium to the amount due under the Note and thus obligated itself to provide insurance to the Debtor, Campbell and Gaethers-Langley is simply wrong. Under the Mortgage, at its option and at the borrower's expense, the lender can, but is not required to, obtain Property insurance coverage in an amount it determines in its sole discretion. *See* Aiello Cert., Ex. B, Mortgage ¶ 5.[65] Here, Ocwen, as servicer to BNY, determined that because Campbell failed to insure the Property, it would obtain Property insurance and contracted with ASIC to issue the Policy. The Lender, not ASIC, charged the insurance premium to the amount due under the Loan[66] and ASIC is bound to disburse the

---

[65] In part, paragraph 5 of the Mortgage states, as follows:

> **5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance**. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. .
> . . .
>
> If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense Lender. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under .this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

[66] The correspondence from Ocwen to Campbell enclosing a copy of the Policy makes this very clear:

proceeds in accordance with the Policy. *See* Compl. Ex. B, Policy ¶ 15--Mortgage Clause ("The word 'mortgagee' includes trustee. If a mortgagee is named in this policy, any loss payable under policy shall be paid to the mortgagee and you, as interest appear."). To be viable, a claim for breach of contract requires the existence of an enforceable agreement. *See Roberts v. Karimi*, 251 F.3d 404, 407 (2d Cir. 2001). The Debtor cannot point to such an agreement and, as such, as a matter of law, he cannot plead a claim for breach of contract against ASIC. Under these facts, it would be futile to grant the Debtor leave to replead that claim. *See, e.g., Int'l Techs. Mktg., Inc. v. Verint Sys.*, Ltd., 157 F. Supp. 3d 352, 365 (S.D.N.Y. 2016) (granting defendant's dismissal of breach of contract claim, without leave to replead "because any attempt to replead on [the basis of the unambiguous expiration of the contract] would be futile."); *Scott v. NASCAR*, No. 6 Civ. 6029, 2008 WL 217049, at *15 (S.D.N.Y. Jan. 17, 2008) (dismissing breach of contract claim as time barred and denying leave to replead because "any attempt to replead . . . would be futile."). Accordingly, the Court recommends dismissing Count Two of the Complaint, without leave to amend.

Count 3: Violation of NY Real Property Actions and Proceedings Law § 1921 Requiring Timely Filing of Discharge of Mortgage, Violation of NY Civil Practice Law an Rules Requiring Timely Filing of Discharge of Judgment Lien, and Unfair Debt Collection Practices (15 U.S.C. § 1692a

---

Enclosed is an insurance policy we have obtained in accordance with your mortgage documents and/or Deed of Trust. Since proof of acceptable insurance coverage has not been provided, Ocwen has obtained the enclosed policy. The annual premium is shown on the policy. This premium will be charged to your escrow account. If you do not have an escrow account, one may be established, or you will be billed directly. Your monthly mortgage payment may be increased to include the cost of this policy.

Please read the important information and instructions contained in this letter.

In the mortgage documents you signed, you agreed to keep insurance on your property at all times.

Failure to do so is a breach of those requirements. We have issued this policy for you because we did not receive timely proof that you have obtained insurance. . . .

Compl. Ex. B.

*et seq.)*

In Count Three, **t**he Debtor focuses on Ocwen's alleged receipt of the Insurance Proceeds that, according to the Debtor, were sufficient to satisfy the Loan in full thereby triggering an obligation under NY RPAPL § 1921 and/or NY CPLR § 5020 to record satisfactions. The Debtor alleges that: (i) after fire destroyed the Property, Ocwen made a claim under the Policy; (ii) ASIC paid Ocwen the sum of $712,908.00, which was the "face value on the [P]olicy;" and (iii) the "Defendants did not file satisfactions of the mortgage and the judgment." Compl. ¶¶ 18, 22.[67] He maintains that "[b]y demanding payment for the loan pursuant to the obsolete Judgment of Foreclosure and Sale, BNY exposed [Debtor] to loss of the [Property], and exposed [the Debtor and Cross-Claimants] to possible deficiency judgment in the amount demanded in, and by, the Notice of Foreclosure and Sales." *Id.* ¶ 39.

Section 1921(a) mandates that "[a]fter payment of authorized principal, interest and any other amounts due" under a mortgage, the mortgagee 'must execute and acknowledge . . . a satisfaction of mortgage" and record it in "the county where the mortgage is recorded . . . ." NY RPAPL § 1921(a). Section 5020 of the NY CPLR provides for the imposition of penalties if a creditor fails to execute and file a satisfaction of judgment "when the judgment is finally satisfied." NY CPLR § 5020. Even accepting as true the disputed assertion that Ocwen received Insurance Proceeds totaling $712,908, and applied them to the Loan, the proceeds were insufficient to satisfy the Loan. The Judgement of Foreclosure states that the obligation under the Loan as of its entry on March 25, 2009 was no less than $881,774.84. *See* Compl. Ex. A, Judgment of Foreclosure at 3. Thus, even if Ocwen applied the Insurance Proceeds to the Loan

---

[67] The Debtor makes the allegations in support of his claims for conversion, embezzlement and violations of the FDCPA in Count Three, although, as already discussed, he seeks relief on account of those claims in Count One. For the reasons discussed above, the Debtor has failed to state claims for conversion, embezzlement or for violations of FDCPA, and, as a matter of law, cannot do so. Accordingly, to the extent that the Complaint could be construed as asserting those claims in Count Three, the Court recommends dismissing them, with prejudice.

balance – which the Defendants deny -- no less than $168,866.84 would remain unpaid.  As a result, even if the Debtor's contentions were true, the payment of the Insurance Proceeds would not trigger an obligation on Ocwen's behalf under either NY RPAPL § 1921(a) or NY CPLR § 1921(a).[68]  Accordingly, the Court recommends dismissing all of the claims in Count Three, without leave to amend.

<u>Count 4: Violation of FDCPA with Special Damages (15 U.S.C. § 1692a *et seq.*)</u>

In support of Count Four, the Debtor alleges that he is entitled to awards of "actual" and "statutory" damages (Compl. ¶ 42) on the grounds that "in the process of representing BNY and Ocwen, McCabe, by and through, Vencer" violated the FDCPA by:

(a) Failing to confirm whether the Judgment of Foreclosure and Sale had been paid off, prior to serving the Notice of Sale;

(b) Failing to file a discharge of judgment;

(c) Failing to file a discharge of mortgage;

(d) Serving the Notice of Sale to obviously incorrect or obsolete addresses, and failing utterly to comply with statutory requirement to post Notice of the Sale in the newspaper for consecutive weeks;

---

[68]  This is so notwithstanding the Debtor's assertion that ASIC determined that the sum of $712,908 was sufficient to satisfy the Loan.  *See* Compl. ¶¶ 18, 19, 30.  The Court gives no credence to that contention for several reasons.  The Court finds it simply implausible that ASIC, rather than Ocwen or BNY, would be the party to determine the total amount owed on the Loan.  *Cf. Grady v. Utica Mut. Ins. Co.*, 419 N.Y.S.2d 565, 569-70 (stating that "insurer's liability is fixed at the amount of the damage sustained in the fire up to the limit of the policy," but that mortgagee's "'interest' . . . would include not only unpaid principal and interest bust also any payments made by the mortgagee to protect his security as well as the costs and disbursements of [a] foreclosure action.").  Additionally, the Policy clearly reflects that it was solely to insure "buildings and structures."  *See* Compl., Ex. B (Policy), ECF p. 7 of 20.  It was not mortgage insurance.

Furthermore, at best, the Policy provided ASIC the option, in the event it denies payment to Campbell, but pays Ocwen, to pay "the whole principal on the mortgage plus any accrued interest."  *Id.* ¶ 15, ECF p. 14 of 20.  Such language, however, actually further contradicts several of the Debtor's assertions.  First, the Policy clearly provides a mechanism for the mortgagee, in this case Ocwen, to receive payment under the Policy, but have payment denied to the insured, in this case Campbell.  That undercuts the Debtor's wholly speculative and unsupported contention that Ocwen forged Campbell's name on the purported Insurance Check.  Second, even if Debtor's allegation that it was ASIC that made any determination concerning paying off the total amount owed on the Loan balance, the language of the Policy clearly indicates that the most that would occur would be ASIC taking an assignment of the loan debt if it pays the total amount outstanding.  It would not actually satisfy the debt.

      (e)  Serving a different Notice of Sale on [the Debtor, Campbell, and Gaethers-Langley], than as filed with the court (the notice to the borrowers included a "Mortgage Account Sheet" of Ocwen Loan Servicing, LLC showing the amount "due now" as $1,481,352.37, whereas the notice file [sic] with the court did not include the "Mortgage Account Sheet" and showed the 'amount of the judgment' as $881,774.84 plus interest and costs;

      (f)  Filing a false Notice of Sale with the court; and

      (g)  Demanding payment of debt not actually owed.

*Id*. ¶ 41.  The McCabe Defendants insist that the Complaint fails to state claims for relief against either of them because it does not specify the provisions of the FDCPA that they allegedly violated or how they violated them.  *See* McCabe Motion to Dismiss Complaint ¶¶ 8, 9.  At the hearing on December 22, 2016, the Debtor advised the Court that he was limiting Count Four to a single claim against Vencer under § 1621f(6) of the FDCPA predicated on the acts alleged in ¶ 41(d) (above).  He also clarified that he was seeking to hold McCabe liable for Vencer's actions solely under the doctrine of *respondeat superior*.

      Even with that modification to the pleadings, the Debtor has not, and cannot state a claim for relief under § 1692f(6).  Section 1692f bars "debt collector[s]" from using "unfair or unconscionable means to collect or attempt to collect any debt."  11 U.S.C. § 1692f.  That "prefatory clause is followed by a list of specific examples of . . . conduct that constitutes a violation of this section."  *Sutton v. Financial Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 314 (E.D.N.Y. 2015) (internal quotation marks omitted) (citation omitted).  Accordingly, "[s]ection 1692f . . . broadly prohibits improper means 'to collect or attempt to collect' any debt, and its list of violative conduct in 1692f is not exhaustive."  *Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 n.4 (3d Cir. 2011).  *See also Foti v. NCO Fin. Sys., Inc.,* 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) ("[Section] 1692f allows the court to sanction improper conduct that the FDCPA fails to

address specifically.") (internal quotation marks omitted) (citation omitted).  To establish a right

to relief under § 1692f, the Debtor must demonstrate that he is a "consumer," and that Vencer is

a "debt collector" who utilized "unfair and unconscionable means" in collecting or attempting to

collect a "debt" from him.  *See* 15 U.S.C. §§ 1692a, 1692f.

The Court previously recommended dismissing the Debtor's FDCPA claims against the

Mortgagee Defendants in Count One, with prejudice, because, among other things, the Debtor

did not, and cannot, plead that he is a "consumer" under the FDCPA.  That rationale holds true

for Count Four.  The Debtor cannot qualify as a "consumer" because, as previously discussed, he

is not obligated to pay the debt at issue herein.  *See* 15 U.S.C. § 1692a(3) (a "consumer" is "any

natural person obligated to pay a debt.").

The McCabe Defendants also contend that Vencer does not qualify as a "debt collector"

under the FDCPA because (i) he is simply an attorney at McCabe and is not an owner or partner

of the firm; (ii) the Debtor's obligations under the Note were discharged prior to the publication

of the Notice of Sale; and (iii) McCabe was foreclosing on the Property.  *See* McCabe Motion to

Dismiss Complaint at 6.  There is no merit to the first contention because an attorney in a law

firm who otherwise qualifies as a "debt collector" is not shielded from liability under the FDCPA

simply because the attorney is an associate at the law firm.  *Cf. Teng v. Metropolitan Retail*

*Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994) (finding collection agency and its

employees, jointly and severally, for violations of FDCPA because each was, in their own right,

a "debt collector" without regard to their employment status).  Nor does the second contention

have merit.  Whether a debtor's liability under a note has been discharged in a bankruptcy is not

defense to an allegation that a person is a "debt collector" under § 1692f(6).  As noted

previously, the general rule under § 1692a(6) is that to qualify as a "debt collector" under the

FDCPA, the party's principal business must be the collection of "debts owed or due or asserted

to be owed or due to another." 15 U.S.C. § 1692a(6). Section 1692f(6) provides an exception to

that general rule. Under that section, the term "debt collector" includes "any person who uses

any instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the enforcement of security interests." *See* 15 U.S.C. § 1692a(6). Thus, the fact that the

Debtor's personal liability under the Note was discharged in his Chapter 7 case is irrelevant to

Vencer's status as a "debt collector" if Vencer was engaged in enforcing BNY's security interest

in the Property. *Cf. Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 323 (D. Conn.

2012) (concluding that FDCPA "expressly includes enforcers of security interests only in

reference to § 1692f(6) [ ]."). That is what the Debtor alleges (Compl. ¶ 7) and the McCabe

Defendants concede. *See* McCabe Motion to Dismiss Complaint at 6 (stating that they were

engaged in *in rem* enforcement through continuing a foreclosure action against the Property).

However, contrary to the Debtor's assertion during oral argument, it does not necessarily follow

that Vencer was engaged in collecting or attempting to collect a "debt." Indeed, the weight of

authority in this Circuit is that actions taken solely to enforce a security agreement are not

considered collection of a debt under the FDCPA. *See, e.g., Boyd v. J.E. Robert Co.*, No. 05-

CV-2455, 2012 WL 4718723, at *19 (holding that proceeding solely against property without

seeking deficiency judgment "constitute[s] the enforcement of a security interest not subject to

the protections of [§ 1692f(6)] of the FDCPA."); *Carlin v. Davidson Fink LLP*, No. 13-CV-6062,

2015 WL 5794250, at *4 (E.D.N.Y. Sept. 30, 2015) (dismissing complaint asserting FDCPA

violation based on "the majority rule that the enforcement of a security interest through

foreclosure proceedings that do not seek monetary judgments against debtors is not debt

collection for purposes of the FDCPA." (internal quotation marks omitted) (quoting *Boyd II*, at

*9)).  There is no dispute that BNY and Ocwen engaged the McCabe Defendants to complete the

foreclosure process, and that they generated the Notice of Sale as part of that process.  The

Debtor cannot allege, let alone establish, that for purposes of the FDCPA, either Vencer or

McCabe were engaged in collecting a "debt" from him.  This is another ground for dismissing

Count Four.

Under § 1692f(6), a debt collector will be deemed to have employed "unfair and

unconscionable" means  to collect a debt if it takes, or threatens to take, "nonjudicial action to

effect disposition or disablement of property" at a time that (i) the debtor does not have a present

right to possession of the property claimed as collateral through an enforceable security

agreement; (ii) the debtor does not have a present intention to take possession of the property; or

(iii) the property is exempt by law from such dispossession or disablement.  15 U.S.C. §

1692f(6).  The Debtor argues that by failing to comply with the statutory requirement to post the

Notice of Sale in a newspaper for consecutive weeks, Vencer utilized 'unfair and

unconscionable" means in attempting to collect a debt from the Debtor.  He put a finer point on

that contention in his opposition, arguing:

> [Vencer's] conduct, which consisted of filing a Notice of Sale with the Court, but
> not publishing the Notice of Sale with the local newspaper as required pursuant to
> New York State Real Property Actions and Proceedings Law § 231 violated 15
> U.S.C. § 1692(e)(4), 15 U.S.C. § 1692(e)(10), and 15 U.S.C. § 1692(f)(6)(A).
> Because Defendant did not publish in the paper he had no <u>present</u> right to attempt
> to sell the premises, and therefore any action that he took was unlawful, and an
> abuse of process.

Debtor Opposition to McCabe Motion to Dismiss Complaint ¶¶ 17-18.  However, even if true,

those allegations do not support the Debtor's claim for relief under § 1692f(6) because the

Notice of Sale is part of BNY's judicial proceeding, not a non-judicial proceeding.  *See Estep v.*

*Manley Deas Kochalski*, LLC, 942 F. Supp. 2d 758, 770 (S.D. Ohio 2013) (finding that letter

from HUD that referred only "to the pending foreclosure action, a judicial proceeding" did not

threaten to "take possession of plaintiffs' property by nonjudicial means;" and "[by] itself did

nothing to achieve possession of the property" did not violate § 1692f(6)).  Thus, by definition,

Vencer's conduct was not "unfair and unconscionable."  For that additional reason, the Debtor

cannot state a claim for relief against Vencer under § 1692f(6).

As clarified during the hearing on December 22, 2016, the Debtor does not seek relief

against McCabe under the FDCPA.  Rather, he rests his claim against McCabe exclusively on

the doctrine of *respondeat superior*.  It is hornbook law that "the doctrine of *respondeat superior*

renders a master vicariously liable for a tort committed by his servant while acting within the

scope of his employment[.]"  *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979) (citation omitted).

In effect, that doctrine involves the imputation to an employer of the "knowledge and conduct"

of a legal entity's "human actors - its officers, agents and employees."  *Prudential-Bache Sec.,*

*Inc. v. Citibank, N.A.*, 73 N.Y.2d 263, 276 (1989).  The FDCPA is silent on the issue of vicarious

liability.  District courts in this circuit have found that only entities that meet the FDCPA's

definition of "debt collector" may be held vicariously liable for the wrongful collection activity

of another carried on for its behalf.  *See, e.g.*, *Okyere v. Palisades Collection, LLC,* 961 F. Supp.

2d 508, 515-16 (S.D.N.Y. 2013) ("[A]n entity that itself meets the definition of 'debt collector'

may be held vicariously liable for unlawful collection activities carried out by another on its

behalf." (internal quotation marks omitted) (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d

379. 404 (3d Cir. 2000))); *Doherty v. Citibank (S.Dak.) N.A.,* 375 F. Supp. 2d 158, 162

(E.D.N.Y. 2005) ("[A] creditor that is not itself a debt collector is not vicariously liable for the

actions of a debt collector it has engaged to collect its debts."); *Fritz v. Resurgent Capital Servs.,*

*LP,* 955 F. Supp. 2d 163, 177 (E.D.N.Y. 2013); *Polanco v. NCO Portfolio Mgmt., Inc.,* 132 F.

Supp. 3d 567, 584 (S.D.N.Y. 2015). However, the Court does not need to reach that issue

because (i) the Debtor waived his FDCPA claims against McCabe, including his allegation that

McCabe is a "debt collector" under the FDCPA; and (ii) regardless, his failure to state a claim

against Vencer means, as a matter of law, that he cannot state a claim against McCabe.

The Court recommends dismissing Count Four as to Vencer and McCabe, without leave

to amend.

## CONCLUSION

Based upon the foregoing, the Court determines and recommends as follows:

1.  The objections filed on behalf of the Debtor, Campbell and Gaethers-Langley to
    the motions to dismiss the Complaint and Cross-Complaints are OVERRULED,
    in their entirety.

2.  The respective Rule 12(b)(6) Motions to Dismiss[69] filed on behalf of ASIC,
    Ocwen, BNY, McCabe, and Vencer, and the ASIC Rule 12(c) Motion are each
    GRANTED, in part, and RECOMMENDED TO BE GRANTED, in part, as
    follows:

    a.  The claims for relief asserted by Campbell and Gaethers-Langley in Count
        One of their respective Cross-Complaints (that is, Count One of the
        Complaint, as incorporated in the Cross-Complaints by reference) under
        the NY DCL are DISMISSED, pursuant to Rule 12(b)(1), for lack of
        subject matter jurisdiction, without leave to amend, as Campbell and
        Gaethers-Langley lack standing under § 544(b)(2) of the Bankruptcy Code
        to assert such claims.

    b.  The balance of the claims asserted by Campbell and Gaethers-Langley in
        support of their claims for money damages and declaratory relief in their
        Cross-Complaints (that is, under Counts One through Four of the
        Complaint, as incorporated in the Cross-Complaints by reference, and in
        Counts Five and Six of Campbell's Cross-Complaint) are DISMISSED,
        pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, without
        leave to amend, since those claims do not fall within the Court's "core" or
        "non-core related to" jurisdiction, *see* 28 U.S.C. § 1334(b), and because
        the Court declines to exercise supplemental jurisdiction over those claims.
        *See* 28 U.S.C. § 1367(c).

---

[69] The "Rule 12(b)(6) Motions to Dismiss" are comprised of (i) the Mortgagee Defendants Motions to Dismiss; (ii)
the ASIC Motions to Dismiss Cross-Complaints; and (iii) the McCabe Motions to Dismiss.

    c.      The claims for relief asserted by the Debtor in support of Count One of the Complaint under NY DCL are dismissed pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, without leave to amend, since the Debtor lacks standing under § 544(b)(2) of the Bankruptcy Code to assert such claims.

    d.      The Court has non-core, related to, jurisdiction over the Non-NY DCL Claims, and all of the parties to the Complaint have not consented to this Court's entry of a final order resolving the motions to dismiss those claims.  *See* 28 U.S.C. § 157(c)(2).  Accordingly, under § 157(c)(1) the Court recommends that the District Court:

        i.      dismiss, without leave to amend, all other claims asserted by the Debtor in the Complaint against Defendants ASIC, Ocwen and BNY in Counts One through Four, namely, conversion, embezzlement, violations of NY GBL § 349, breach of contract, violation of 11 U.S.C. 509(b)(2), violations of the FDCPA, and the failure to comply with NY RPAPL § 1921 and CPLR § 5020, pursuant to Fed. R. Civ. P. 12(b)(6), for failing to state a claim upon which relief may be granted; and

        ii.      dismiss, without leave to amend, all causes of action asserted in Count Four of the Complaint against Defendants McCabe and Vencer, pursuant to Fed. R. Civ. P. 12(b)(6), for failing to state a claim upon which relief may be granted.

    3.      In accordance with Fed. R. Bankr. P. 9033, the Clerk shall serve forthwith copies of this Memorandum Decision and Proposed Findings of Fact and Conclusions of Law on all parties by mail and note the date of mailing on the docket.

IT IS SO ORDERED.

Dated:  New York, New York
        June 13, 2017

           /s/ *James L. Garrity, Jr.*
           Hon. James L. Garrity, Jr.
           U.S. Bankruptcy Judge